EASTERN DIS.
May, 1841.

PULLEY &
ERWIN
*vs.*
MUNICIPALITY
NO. 2.

table title thereto and ought not now to be disturbed; but the rights of the public as to what is not in the actual possession of the defendants must not be affected by the judgments which they have obtained.

I am therefore of opinion that the judgment of the Parish Court be affirmed.

## PULLEY & ERWIN *vs.* MUNICIPALITY No. 2.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF

NEW ORLEANS.

The *use* of batture *outside* of the levee, is vested in the public, but the *ownership* or *title to the soil* is vested in the front proprietors of lots, or the land to which the batture attaches or forms.

The corporation or municipality is the administrator of the *use* of the batture for the public, outside of the levee, and have the right of taking earth for the construction of embankments, levees and wharves for the *public use on the batture* along its whole extent within the corporate limits of the city; and also for improving the port, and the streets and avenues leading to it.

The plaintiffs allege they are the owners and have been in the undisturbed possession of six *lots,* composing a square or islet of ground in the Faubourg Delord, fronting on the river Mississippi and on New Levee, Benjamin and Suzette streets. That the authorities of the Municipality have illegally disturbed them in their said possession and committed various acts of trespass, injury and damage to their property; more especially in digging and carrying away a large quantity of earth or dirt from their premises; making large holes and rendering it unfit for use and destroying its value to their great damage more than $20,000. They pray for an injunction, restraining and prohibiting the defendants from any further pro-

ceedings or committing any further acts or depredations on
their said property, and that they have judgment for $20,000
in damages.

EASTERN DTS.
*May*, 1841.

PULLEY &
ERWIN
*vs.*
MUNICIPALITY
NO. 2.

The defendants pleaded the general issue ; and averred that
they had a right to take earth from this *batture*. They pray
that the injunction be dissolved with damages.

Upon these pleadings and issues the parties went to trial be-
fore the court and a jury.

The evidence showed that the premises or *locus in quo* was
situated *outside* of the regularly established levee and front
street ; that Pulley, one of the plaintiffs, made a levee *in front
of this property*, which was at some places *three* and at others
*four feet high*, for the purpose of keeping the water out, and
from being overflowed at high water ; that he had built a
dwelling house, stables, sheds and negro houses or huts.   He
carried on the lumber business.   Some of the buildings erected
by him were of brick and two stories high.

The corporation entered on this property for the purpose of
making wharves, clearing it to make room for landing, lading
and unlading merchandize, 'produce and other articles of trade
and commerce ; and to keep it open as part of the port of New
Orleans.

The Municipality, for the purpose of filling in and erecting
wharves, dug out a large square hole on the premises, from
which they took the earth or a large quantity of dirt, which was
used in filling up in front, and above and below the batture or
property in front of which it was taken.

There was a mass of testimony taken and submitted to the
jury, touching the situation of the property and the nature of
the defendant's works and operations on the same.   The judge
presiding delivered an elaborate charge to the jury, defining
the rights of the public to the banks and bed of the river; and
particularly instructing them that the defendants had no right
to dig and carry away earth and dirt from the premises.   This
charge is comprised in the opinion of the court, and need not
be recapitulated.

EASTERN DIS.
May, 1841.

PULLEY &
ERWIN
vs.
MUNICIPALITY
NO. 2.

The jury returned a verdict for the plaintiffs, and assessed their damages at $5000. From judgment confirming this verdict, the defendants appealed.

*Preston & Roselius*, for the plaintiffs.

*C. M. Conrad & Lockett*, for the defendants.

*Garland, J.* delivered the opinion of the court.

The petitioners allege that they are the joint proprietors and possessors of six lots of ground in the suburb Delord in this city, fronting on the river, and have been so for seven years past, that they have been disturbed in the enjoyment and possession of their property, by various persons acting under the authority of the City Council of the Second Municipality, entering upon their premises and committing various trespasses and injuring their property by digging and taking away a large quantity of earth and sand, making holes in the ground, so as to render it unfit for use and destroy its value. That if these acts are permitted and continued the property will be destroyed. They therefore pray that an injunction issue to restrain the defendants in their proceedings and for $20,000 damages.

The answer is a general denial and an assertion of right to take earth from the batture.

Upon the trial a number of witnesses were examined and many things stated, which were no doubt intended to bear on a very important question which the plaintiffs wished to try, that is, to whom the batture in front of their property belonged. That question having been settled in the case of the present defendants vs. the New Orleans Cotton Press Company, (ante 122,) it is not now necessary to re-examine it. As to that question the case stated settles the rights of the present plaintiffs; they being in a situation so nearly similar to the Cotton Press Company as not to make any material distinction between their rights of property in reference to the present defendant. The question in relation to the trespass and damages is the only one now to be considered ; and it is perhaps fortunate for a portion

of the public, this case comes up so soon after that one, as our
decision will be a commentary upon it, and a practical illustration of the principles settled therein.

The evidence shows that the plaintiffs being owners of the front lots, had used various means to raise the batture, by sinking or permitting sunken boats and other craft to remain on it; leaving various materials to mix with the mud deposited by the river. Pulley, one of the plaintiffs, without any authority from the City Council, made a levee on the batture outside the levee authorized by law, whereby he reclaimed and protected from inundation a considerable piece of ground, which he used as a lumber yard, for cutting up rafts of timber and flat boats for wood; he also had on it some stables and store houses or sheds for storing lime, hay and other articles, having a large grocery establishment near on one of his lots; all of which were valuable and produced a large annual revenue. Upon this place the agents of the corporation entered and dug one or more holes, about five feet in depth, about two hundred and fifty feet long, and one hundred feet wide; making about seven thousand cubic yards, taking the earth to use it in the construction of embankments, levees and wharves, which were then being constructed for public use on that batture and in the vicinity above and below it, under an ordinance of the Council. The effect of the operations of the agents of defendants, was to entirely break up Pulley's establishment on the batture.

The jury gave the plaintiffs $5000 damages " for being deprived of the use of the premises and carrying away the earth," on which verdict a judgment was rendered and the defendants appealed.

We find a number of bills of exceptions to the admission of testimony, which it is unnecessary to decide as the cause will not be remanded; and as to those of both plaintiffs and defendants we shall despatch them all (some half dozen or more) at once. We think with the exception of the concluding portion of the judge's charge to the jury, he was correct in every particular, and we have incorporated it nearly verbatim into this

EASTERN DIS.
May, 1841.

PULLEY &
ERWIN
vs.
MUNICIPALITY
NO. 2.

opinion, as presenting as lucid an exposition of the law, as it is in our power to give. He says:

"Corporations of cities and towns may construct on the public places, in the beds of rivers, and on their banks, all buildings and other works necessary for public utility, for the mooring of vessels and the discharge of their cargoes, within their respective limits; La. Code, art. 859."

"The bed of a river is the space contained between its banks. The banks of a river are understood to be that which contains it in its ordinary state of high water; on the banks of the Mississippi where there are levees, the levees form the banks; Idem, 448."

"The bed of rivers is public property, as long as it is covered with water; Idem, 444."

"The *use* of the banks of navigable rivers or streams is public; accordingly every one has a right, freely to bring his vessels to land there, make fast the same to the trees which are there planted; to unload his vessels, deposit his goods, dry his nets, and the like:"

"Nevertheless, the *property* of the banks of rivers, belongs to those who possess the adjacent lands; Idem, 446."

"The levees on the banks of the Mississippi being the banks of the river, the space between the levees being its bed, and the beds of rivers being public property, the property of the banks of rivers belonging to those who possess the adjacent lands, it follows that if the owners of lands adjacent to the banks or levees of the Mississippi, were allowed to advance their levees farther into the river; or in other words to advance the banks, they would add a part of what before was the bed of the river, to their property."

"By the first section of an act approved February 15th, 1808, (1 Moreau's Dig., 651) it is provided that 'no individual shall make any new levee, dike or embankment in front of those which exist at present, that is to say nearer the river than those actually existing; unless he shall previously have been

EASTERN DIS.
_May_, 1841.

PULLEY &
ERWIN
_vs._
MUNICIPALITY
NO. 2.

authorized thereto by a jury of twelve inhabitants, proprietors of plantations, situated on the banks of the said rivers, convoked for that purpose by the Parish Judge.' "

" By the 5th section of an act approved March 25th, 1813, ' entitled an act further defining the organization, authority and functions of Police Juries,' (2 Moreau's Dig., 241) the Police Juries of the several parishes, were empowered ' to make all such regulations as they might deem expedient,' as to the proportion and direction, the _making_ and repairing of the roads, bridges, causeways, dikes, _levees_ and other highways."

" By the 7th section of the same act it is enacted that ' the authority of the Police Jury of the parish of Orleans, shall not extend to the city of New Orleans within the present limits, but it shall be the duty of the corporation of said city to exercise within said limits, the functions committed by law to the Police Juries.' "

" By the first section of an act approved March 14th, 1816, full power is given to the city corporation of New Orleans to pass all ordinances ' to secure the safety and convenience of passing in the streets and squares, ways, _levees and other public roads_, to fix the squaring and to prevent any encroachment or other undertaking on the _said public roads_.' "

" By the law of 1836, dividing the city of New Orleans into three distinct Municipalities, each Municipality is vested with the powers formerly possessed by the city corporation of New Orleans."

" From what precedes, I infer that as long as the erection of a new levee has not been authorized by the proper authority, the old levee remains the bank of the river; what is outside remains the bed of the river."

" But by our law, alluvion, that is to say, accretions which are successively formed, and imperceptibly, to a soil, situated on the shore of a river, belongs to the owner of the soil situated on the edge of the water; La. Code, art. 501. Just as we have seen above, that the banks of rivers belong to the owners of the adjacent lands; that is to say, the _property_ of both the

EASTERN DIS. alluvions (or battures) and of the banks, is in the riparian
*May, 1841.* owner; but as long as the alluvion is not actually incorporated
PULLEY & to the main land of the riparian owner; and that actual incorpo-
ERWIN
*vs.* ration only takes place when a levee or bank separates it from
MUNICIPALITY
NO. 2. the water; and as long as the bank actually remains the bank
of the river, according to the definition given above, the *use* of
both remains in the public."

" We will have seen above, that corporations of cities and
towns have the right to construct in the beds of rivers and
on their banks buildings and other works necessary for pub-
lic utility, for the mooring of vessels and the discharge of their
cargoes."

" Upon the whole I consider that the Second Municipality
had a right to construct and erect the works in question, com-
plained of by the plaintiffs and that they are not liable to da-
mages for so doing."

The judge, in the conclusion of his charge, told the jury he
thought the Municipality had no right to take away the earth
from the premises in question, and therefore it was proper for
them to enquire into that fact, and should they find it affirma-
tively, then they would be justified in awarding damages pro-
portionate to the value of the earth so taken. In this we think
the learned judge erred.

The *use* of
batture *outside*
of the levee, is
vested in the
public, but the
*ownership* or
*title to the soil* is
vested in the
front proprietors
of lots, or the
land to which
the batture at-
taches or forms.

The corpora-
tion or munici-
pality is the ad-
ministrator of
the *use* of the
batture for the
public, outside

In the case of the Municipality No. 2 vs. the Cotton Press
Company, it was settled, that the use of the banks of the river,
and the batture outside of the levee, was vested in the public,
but the ownership or title to the soil was vested in the front
proprietors; and they cannot deprive the public of that right of
use at their pleasure, or impose any but legal limitations on it.
The defendants are the administrators of that use for the general
convenience and great objects of public utility, and must ne-
cessarily possess all the powers and authority requisite to effect
those objects. The article 859 of the Code, we have seen,
authorises the construction of buildings and works in the beds
of rivers, and on their banks, that "may be necessary for public
utility, for the mooring of vessels, and the discharge of their

cargoes." We think, in reference to this article and several others, relating to the · uses stated, that they confer plenary powers, and should be liberally construed, when the whole community is to be benefited, and an individual injured no further, than being deprived of such profits, as he supposes he could have made. It may be further remarked, that the expression for mooring of vessels, spreading nets, building cabins, &c., used in the Code, whilst they are permissive for those purposes, are not intended as restrictions of the use to those purposes alone, but as examples, or illustrations of its application. The public is a great usufructuary, the corporation is the administrator, and is not restricted to a mere right of way over the batture or the bank, or to keeping it for the special use of the owner. They have a right to all the profit, utility, and advantages it may produce, and can make works and improvements to increase the revenues.

EASTERN DIS.
*May*, 1841.

PULLEY &
ERWIN
*vs.*
MUNICIPALITY
NO. 2.

of the levee, and have the right of taking earth for the construction of embankments, levees and wharves for the *public use on the batture* along its whole extent within the corporate limits of the city; and also for improving the port, and the streets and avenues leading to it.

Pulley had no right to go upon the batture and act as he did, without the assent of the corporation ; he had no right to appropriate to his exclusive use, that which his fellow citizens were entitled to share with him. He had proceeded, until, to use the language of his counsel, he had made it almost a *private landing*. He was violating the law at the time himself, and has no claim for damages.

It seems a strange doctrine, that earth cannot be used from the batture, to construct works useful to the public, but which so greatly benefit the property inside the levee, which belongs to the riparian owner. Green, who was to give $320,000 for the square, to which this batture belonged, says, he would not have given much more than half as much, if it had been a few squares distant ; and Erwin, when he took Mr. Conrad to look at the property, pending a negotiation to purchase it, pointed out the improvements going on, expatiated on their importance, the facilities and inducements held out to commerce by them, and now we are seriously presented with a claim for the value of the dirt used, in giving nearly a double value to the property

EASTERN DIS. adjoining the place, from whence it was taken. We cannot
May, 1841. give our sanction to such a demand.

CITY COUNCIL OF
LAFAYETTE;    We think, the Municipality not only has a right to use the
vs.    earth, taken from the batture, in the construction of wharves,
HOLLAND ET AL.
embankments and levees, but also for improving the port, and
the streets, and avenues leading to it.

The judgment of the Parish Court is therefore annulled,
avoided and reversed, and ours given for the defendant, with
costs in both courts.