M. Brown & Co. et als. *v.* V. Duplessis and City of New Orleans.

The streets of an incorporated city are destined for public use, but not for a *particular mode* of public use.

The city of New Orleans has the right to sell the right of way in the streets to private individuals, for a specified time, with the privilege of laying rails and running horse cars over them, according to a tariff to be fixed by the Common Council ; this right is conferred upon the city by the Act incorporating it, and upon all incorporated cities or towns in the State, by the Act of 1855, relative to the organization of corporations for works of public improvement.

APPEAL from the Fifth District Court of New Orleans, *Eggleston, J.* *Koontz & Roselius,* for plaintiffs and appellants. *Michel & Dufour,* for defendants.

Cole, J. The principal question in this case is, whether the corporation of the city of New Orleans has the power to sell the right of way for twenty years for the establishment of a railroad in the streets of the city ; the cars to be drawn by horses or mules, and to be run as often, per day or night, as the contractors may deem proper, but not at greater intervals than every ten minutes, from daylight until ten o'clock P. M., and every thirty minutes from ten o'clock until midnight.

The Comptroller, in pursuance of the authority vested in him by an ordinance of the Common Council of New Orleans, offered the right of way for sale.

The adjudication was arrested by an injunction, at the instance of the plaintiffs, who allege themselves to be owners of real estate in the city, situate on the streets through which the railroads are to be laid and run.

Plaintiffs allege that the Common Council of New Orleans is without authority in law to sell or lease the right of way aforesaid, because said right and authority are not by law vested in the Common Council, but in the Legislature of the State of Louisiana.

They allege, further, that the city of New Orleans has not the right to lease said right of way, without first having obtained the consent of the property holders on said streets.

That the construction of said railroad track, and the running of cars upon said road, in said streets, will cause their property to depreciate in value ; and further, will deprive petitioners and others, of the free and unreserved use of open streets, accessible at all times and places, for vehicles usually traversing the public streets of New Orleans, and will create and maintain an obstruction in said streets for twenty years.

Petitioners further allege, that the Common Council of New Orleans is not authorized in law to grant said right of way, in said public streets, for twenty years, for railroad purposes, to the exclusive use and benefit of the parties who may purchase the same, because said acts are an appropriation of a portion of the public streets of the city of New Orleans for private uses, which is illegal and reprobated by law. They also aver that the ordinance creates an obstruction, because it prescribes that on certain of said streets, the cars shall only be allowed to run in one direction, and never in the other direction.

The corporation of New Orleans took a rule on the plaintiffs to show cause why the injunction should not be dissolved, because the petition exhibited on its face no grounds for the issuance of the writ.

Upon the trial of the rule, it was made absolute, and the injunction was dissolved. Plaintiffs have appealed.

The material inquiry in the decision of this case is, what are the rights of plaintiffs to the streets of New Orleans ; for if their rights are not disturbed, they have no personal ground of complaint.

Streets, public walks and quays, are things which belong in common to all the inhabitants of cities and other places, and to the use of which all the inhabitants of a city or other place, and even strangers are entitled in common. C. C. 449, 444 and 445.

Plaintiffs cannot then claim an exclusive use of the streets, or complain if their use of the same be impeded by a similar use of the streets by other persons. No citizen is empowered to demand such an exclusive use of the streets, as will free him absolutely from inconvenience. It is an inconvenience for him who wishes to take an airing in his carriage, to be impeded by omnibuses and drays ; but he cannot exclude them from the use of the streets.

Each citizen is entitled to the use of the streets in his mode of conveyance, whether in a carriage, buggy, cart, or on a dray, but he cannot complain if others adopt a mode of conveyance different from his own, and which prevents him from traversing the streets as rapidly as he might otherwise do.

No citizen has a legal right to complain that the streets are used by other citizens, in a peculiar manner, even if it causes him a little inconvenience, as long as he himself is allowed the free use of the streets in his peculiar mode.

The streets are destined for public use, but not for a *particular mode* of public use.

If the city of New Orleans wished to expend the money necessary for the laying of rails throughout the city, for the purpose of permitting all who wished to run their own cars thereupon, drawn by horses or mules, no one could complain, as long as it did not prevent other modes of traversing the streets, for traveling in cars on rails is one mode of using public streets, and there is no reason in the nature of things why it should be lawful to travel in a carriage or gig upon the streets, and not lawful to travel in a car upon rails fixed in the streets, but not so laid as to prevent the use of the streets by other modes of conveyance.

If it does not suit the public coffers, or the public convenience, that the city should lay rails for the free use of the public, it follows from the premises that the city has the prerogative of selling the right of way for a specified time, to one or more persons, who shall lay rails and have the privilege of running cars, drawn by horses or mules, according to a tariff fixed by the Common Council.

The selling of this right of way does not impede citizens from using the streets in any other mode of ordinary conveyance; it promotes trade and commerce ; unites the distant parts of the city, and benefits the health of citizens, by enabling them to have their residences at a distance from the crowded thoroughfares of the city.

The selling of this right of way is not an alienation or appropriation of a portion of the public streets for private uses, any more than the licensing of omnibuses or hacks for a specified period, is an alienation or appropriation of the public streets.

Property holders on the streets through which the proposed railroads shall be constructed, cannot complain, for they still have the use of the streets in their desired mode of conveyance, with the additional privilege of riding for a small compensation in the cars. If the running of these cars should depreciate their

Brown
v.
Duplessis

property, they cannot legally complain, because they are not divested of the use of the streets, and the destination of public streets is not for any peculiar mode of travelling, but for all such modes as shall best suit the convenience of the public.

The preserving a certain space in a street, for the use of the cars, which pursue one direction without deviation, cannot be said to obstruct the streets, for they can occupy, but for a short time, any particular part of the streets.

An omnibus or carriage, and every other vehicle, occupies a certain space in the streets, and it does not seem to be a sufficient objection to cars. that they move in a fixed direction ; on the contrary, it is more easy to get out of their way, than out of the way of those vehicles whose course depends upon the volition of the driver.

It cannot be considered as an objection, that on certain streets, the cars shall run up, and shall never be run in the opposite direction.

This is a mere arrangement for public convenience, dependant upon the discretion of the Common Council.

It does not abridge the rights of the public, for they are not obliged to use the cars unless they think proper.

If the running of cars in one direction benefits the public, the Common Council cannot be deprived of the right of doing this much good, because the running of them *up* and *down* might benefit the city still more.

The City Charter empowers the Common Council to establish railroads, such as are proposed in this instance, to be run by horses or mules. It says : " The Mayor and Common Council shall have *full power and authority* to make and pass such by-laws and ordinances as are *necessary and proper,* and are not contrary to the Constitution and laws of the United States or this State ; first, &c. * * * Second, to regulate and make improvements to the streets, public squares, wharves, and other property. * * * Twelfth, to make regulations for the proper government of carts, drays, carriages, omnibuses, and other vehicles of every description, which run in the streets, or any where within the limits of the city, and to determine through what streets the same shall pass." Revised Statutes, sec. 51, pp. 368, 370. Vide also, C. C. 859 ; 18 La. 284 ; *Drake* v. *The Hudson River Railroad Company,* 7 Barbour's Supreme Court Reports, 524.

The City Charter vests the Mayor and Common Council with full power to make such by-laws and ordinances as are necessary and proper, for regulating and making improvements to the streets.

It is left to their discretion, under the control of the courts, to decide what improvements shall be made in the streets, and we cannot say that they have abused this discretion in the ordinances now under consideration.

We would also observe, that the 13th section of the Act of 1855, relative to the organization of corporations for works of public improvement, declares that : " No railroad, plankroad nor canal, shall be constructed through the streets of any incorporated city or town, without the consent of the Municipal Council thereof." Rev. Stat. p. 116, § 13.

This section implies that the city has the power to establish railroads, if she thinks proper so to do.

Judgment affirmed, with costs of appeal.