LAND, J.
“The plaintiff sues the defendant for the whole cost of the installation of an interlocking signal system constructed by the plaintiff on a public street in the city of New Orleans where the main lines of the two companies cross. The defendant admits liability for one-half of the cost of such installation. Judgment was rendered according to the contentions of the defendant,' and the plaintiff appeals.” The above is copied from the brief of the defendant as furnishing a clear and terse statement of the nature of the case under review.
The plaintiff company in 1867 and 1869 obtained from the city of New Orleans a license to lay and operate its tracks on a number of public streets of the municipality, including the intersection of Florida walk with Washington avenue. The plaintiff company has been operating a steam railroad on said streets and intersection for some 30 years.
In 1895 the New Orleans & Western Railroad Company, a steam railroad, obtained from the city of New Orleans a permit to lay and operate its tracks through the streets of said city, under the express proviso that nothing was given conflicting with previous grants. ■
The New Orleans & Western desired to cross the tracks of the Louisville & Nashville at Florida walk, and also to make two switches there connecting with its main line, and to that end entered on July 31, 1895, into a written contract with the Louisville & Nashville. Under the terms of this agreement, the right to cross and intersect was granted on the condition that the crossing and intersections were to be constructed and maintained without, any expense, damage, or injury to the property of the Louisville & Nashville Railroad Company, and solely at the expense of the New Orleans & Western Railroad Company; and on the further condition that the grantee, its successors and assigns, should supply and maintain free of all expense to the grantor, its successors and assigns, all such signals and watchmen as may be deemed necessary by the grantor, to guard against accidents or damages of all kinds liable to occur at or near said crossings; and on the further condition that the grantee would, at its sole expense, and without any contribution from the grantor, comply with all laws or ordinances which might thereafter be adopted providing for gates, signals,’ watchmen, or any device of any kind at said crossings. The contract further provided that if the New Orleans & Western Railroad Company should fail or refuse, when called upon by the Louisville & Nashville Company, or when required by any law or ordinance, to furnish and maintain all such appliances, including automatic signals, interlocking and derailing switches and watchmen, as said Louisville & Nashville Railroad Company might from time to time deem necessary, to properly guard said cross ings, or should fail to comply with any of the requirements of the laws of the state or of the ordinances of the city of New Orleans, then in such event the Louisville & Nashville Railroad Company might take up and remove such crossing or crossings as the New Orleans & Western Railroad Company, its successors or assigns might have put down or constructed, or might at its option furnish such appliances or comply with such laws or ordinances, and demand the cost thereof from the New Orleans & Western Railroad Company. This contract was never recorded.
The New Orleans & Western made the crossing provided for in the above contract, and complied with all of its obligations until April 8, 1901, when its property and rights were sold under a decree of the federal court to the New Orleans Belt & Terminal Company, whose officers were actually aware at *981 the time of said purchase of the existence and terms of said contract.
In December, 1903, it became necessary, and was required by law for the plaintiff company, to construct an interlocking signal system at the crossing of the main lines of the two companies. The New Orleans Belt <& Terminal Company, after due notice and demand made on December 3, 1903, refused to construct or pay for such appliances, and denied its obligation to do so.
On December 26, 1903, the New Orleans Belt & Terminal Company sold all of its property and franchises to the New Orleans Terminal Company, whose former name was the New Orleans & San Francisco Railroad Company.
After this purchase, the Louisville & Nashville Railroad Company made demand on the New Orleans Terminal Company to install an interlocking signal system at the crossing aforesaid. That company declined. The Louisville & Nashville Railroad Company then put in the system at a cost of $6,220.24 and demanded payment of the whole sum. The terminal company offered to pay half the cost. This offer was declined, and the present suit was brought.
The defendant company since its purchase has been using said crossing and also the interlocking system installed by the plaintiff company. There is nothing to show that the officers or agents of the defendant company had any notice or knowledge of the contract sued on prior to the sale of December 26, 1903.
The demand of the plaintiff is bottomed on the theory that the defendant is bound by the contract of July 31, 1895. The petition alleges that the defendant and its predecessor were fully aware and had knowledge and notice, actual and implied, of the terms of said contract. In the alternative, the petition alleges that the continued use of said crossing by the defendant and its predecessor made it necessary for the plaintiff company to furnish and install said appliances, which otherwise would not have been required, and that the defendant has been benefited thereby to the full extent of the cost of the same.
As already stated, the contract in question was never recorded, and it is not shown that the defendant company ever had any knowledge of this contract when it bought the property and franchises of the New Orleans Belt & Terminal Company. The contract in question was relative to and affected immovable property, and created a real .obligation and a real right. See Railroad Company v. Railroad Company, 44 La. Ann. 60, 10 South. 389. That a railroad track is real property is not disputed. All contracts affecting immovable property not duly recorded are null and void except between the parties thereto. Civ. Code, art. 2266. Hence the tracks of the New Orleans & Western Railroad Company, where they cross or connect with those of the plaintiff company, passed to the defendant free of the obligations imposed by the contract of July 31, 1895. Defendant is in the position of a railroad corporation which has already exercised the right to cross the tracks of another railroad corporation. The only contention left is the right of the plaintiff, as a matter of law, to impose on the defendant the entire cost of constructing and maintaining an interlocking signal system, which, according to the statement of facts, “was in fact necessary and required by law in order to properly guard the crossing aforesaid.” .
We learn from the argument of counsel that the “law” referred .to is a rule adopted by the Railroad Commission of the state, which, we assume, throws no light on the question of cost now under consideration.
The Legislature has not deemed it necessary 'to define the rights and obligations of railroads, whose tracks intersect, connect, or *983 cross. The Railroad Commission has no.t, so far as we are informed, made any rules on the subject. Under the ordinances of the city of New Orleans (in force in 1895), the expense of crossings is divided equally between the street railroads crossing each other, but the cost of maintenance is imposed entirely on a steam railroad crossing a street railroad. There is no special provision for maintenance where a steam railroad crosses a street railroad.
“Art. 1815. That in the future any new road (not now in existence) crossing any street or steam railroad, the said new road shall bear the entire expense of laying the same.
“Art. 1816. That the expense of maintenance shall be as herein provided.” Elynn’s Digest, p. 706.
“Public things are those the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation.” Civ. Code, art. 453.
“Things which are for the common use of a city or other place, as streets and public squares, are likewise public things.” Civ. Code, art. 454.
Streets are common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common. Civ. Code, art. 458. -In this state, abutting proprietors are not recognized as having a fee in the sidewalks or streets in front of their estates. Irwin v. Telephone Co., 37 La. Ann. 67. In Brown & Co. v. Duplessis and City of New Orleans, 14 La. Ann. 842, the power of that municipality to license the establishment of a railroad in the streets of the city, the cars to be drawn by horses and mules, was challenged. The Supreme Court affirmed the power, as resulting from the following provision of the Acts of 1855, p. 184, No. 131:
“No railroad, plank road nor canal, shall be constructed through the streets of any incorporated city or town, without-the consent of the municipal council thereof.”
In answer to the objection that the construction and operation of the proposed street railroad would deprive petitioners and others of “the free and unreserved use of open streets,” and would create and maintain an obstruction in said streets, the court said:
“No citizen has a legal right to complain that the streets are used by other citizens, in a peculiar manner, even if it causes him a little inconvenience, as long as he is allowed the free use of the streets in his peculiar mode. The streets are destined for public use, but not fora particular mode of public use.”
The court recognized the street railway as. a new. mode of conveyance not differing in principle from other modes of conveyance-used by citizens, such as by omnibuses, carriage's, carts, drays, etc.
The analogy between a street railroad and the ordinary modes of conveyance was the basis of the judgment rendered in that case, and .the court compared the granting of the-franchise for a street ear railway to the “licensing of omnibuses or hacks for a specified period.” The court recognized that no one can claim the exclusive use of the streets,, and that every citizen has the right to use the streets in his own particular mode of conveyance.
A railroad in a street owns nothing but its tracks thereon and a right of passage over its -own rails, subject to the right of' the public or of other railroads properly authorized to use .the street. The crossing of the plaintiff’s track by the rails and cars of the defendant was not an appropriation of the property of the former to the use of the latter, but a mode of exercising the public-right of transit over the street. Brooklyn Central, etc., v. Brooklyn City R. Co., 33 Barb. (N. Y.) 420; Elizabethtown Railroad v. Ashland, 96 Ky. 347, 26 S. W. 181. The following extract from the case of Central Passenger Railway Company v. Philadelphia Railway Company, 95 Md. 428, 52 Atl. 752, is cited by plaintiff’s counsel:
“The common-law doctrine that whatever structures are necessary for the crossing of an old way by a new must be erected and main- *985 tamed at the expense of the party under whose authority and direction the crossing is made is applicable to railways and railroads which intersect each other upon the public streets of a city, unless that doctrine be modified by statute.”
The case cited seems .to be confined to ■structures necessary for the original crossing, and to assume that the prior establishment of the old way imposed on the new way the perpetual burden of maintaining the crossing as a whole. We do not think that this doctrine is applicable, under the provisions of the Civil Code, and the ordinance of the city of New Orleans, to railroad crossings in a public street Under said ordinances, the new road must bear the entire expense of laying the crossing, but the expense of maintenance is equally divided in case of two street railroads, and is imposed entirely on a steam railroad when crossed by a street railroad. Under this legislation, the question of priority in time cuts no figure as to cost of maintenance of crossings, which is determined by the character of the two railroads. Reasoning from analogy, where two steam roads cross in a public street, the burden of maintenance should be equally divided between them. Where a crossing has been once established between two railroads, with equal rights to use the same public street, the maintenance of such crossing is in the interest of both railroads, and equity demands that the cost of the same should be equally divided between them. The argument to the contrary is based on the fallacious assumption that the plaintiff railroad is entitled to an “uncrossed track” Jn a public street by virtue of some superior right of privilege. The particular question before us has never been decided by this court.
In Shreveport & Red River Valley R. Co. v. St. Louis & Southwestern R. Co., 51 La. Ann. 814, 25 South. 424, the plaintiff sought to expropriate a strip of ground owned and possessed by the defendant company under a grant from the city of Shreveport.
In Houston & S. R. Co. v. Kansas City, S. & G. R. Co., 109 La. 582, 33 South. 609, the plaintiff sought to expropriate a crossing over the track and right of way owned by the defendant.
In Kansas City, S. & G. R. Co. v. Louisiana Western R. Co., 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, the plaintiff, sought to expropriate switch crossings over the right of way of defendant, which did not extend beyond the ground covered by its tracks.
In none of the cases cited is there the remotest suggestion that the ground or the crossing used for it was a public street or place.
In the last-cited case, the plaintiff before the jury and the Supreme Court admitted its obligation to construct and maintain the crossings at its own expense.
Iu the case at bar the crossing was made by the New Orleans & Western Railroad Company long before the defendant company acquired the ownership of the property. In December, 1903, an order was issued by the Railroad Commission requiring railroads to install interlocking signal systems, which have nothing to do with the maintenance of the original crossing. This system was for the advantage of both roads, and we think that the burden of its cost and maintenance should be shared equally.
Judgment affirmed.