LAND, J.
Plaintiff and defendant companies operate steam railroads within the limits of the city of New Orleans, and crossing each other at the intersection of Elysian Eleld and Marigny avenues in said city.
The object of the present suit is to recover from defendant company one-half of the wages of a flagman, maintained and paid by plaintiff company at said crossing, from January 1, 1904, to November 30, 1919; the amounts, in addition to that claimed in the original petition filed October 6, 1908, being embraced in two supplemental and amended petitions.
*520 Plaintiff’s cause of action is based neither upon any law or ordinance requiring the maintenance of any flagman at this crossing, nor 'upon any contract with plaintiff requiring defendant company to share such expense equally with plaintiff.
The sole basis of plaintiff’s suit is that the crossing is dangerous, the necessity, therefore, of protecting the public at the crossing, and “the mutual benefit of both parties.”
Defendant company filed an exception of no right or cause of'action, which was sustained, after a hearing upon the merits.
In the absence of any law or ordinance, or contract on the subject directly with plaintiff, defendant company also set. up in its answer a certain contract with the New Orleans & ‘Western Railroad Company, the predecessor of plaintiff company, of date August 21, 1895, by the terms of which the former company was penhitted io cross the tracks of defendant company, under the conditions that such crossing should be constructed and maintained, that signals and flagmen should be supplied, and that all laws and ordinances providing for gates, signals, watchmen, or any device of any kind at crossings should be complied with at the expense of the New Orleans & Western Railroad Company and its successors and assigns.
This contract was never recorded. This crossing was constructed by the New Orleans & Western Railroad Company in the latter part of the year 1895. Subsequently its property, etc., was sold under an order of the federal court and purchased by the New Orleans Belt & Terminal Company. All of the assets, etc., of the latter company were acquired later by sale to the New Orleans Terminal Company, plaintiff'in this suit.
The New Orleans Belt & Terminal Company and the New Orleans .Terminal Company continued to employ a flagman, evidently under the terms of the original contract between defendant company and the New Orleans & Western Railroad Company, until the year 1908, the date of the decision of this court in the case of Louisville & Nashville Railroad Co. v. New Orleans Terminal Co., 120 La. 978, 45 South. 962, in which it was held that a similar contract was not binding on the New Orleans Terminal Company, as said contract was one affecting real estate and had not been recorded.
In that case the plaintiff had sued the defendant for the whole cost of the installation of an interlocking signal system constructed by plaintiff on a public street in the city of .New Orleans, where the main lines of the two companies crossed, and the defendant admitted liability for one-half of the cost of such installation.
The contract in that case was between the New Orleans & Western Railroad Company, the predecessor of the New Orleans Terminal Company, and the Louisville & Nashville Railroad Company. One of the conditions of said contract was that the New Orleans & Western Railroad Company, in exercising its right under said contract to cross the tracks of the Louisville & Nashville Railroad Company, should supply and 'maintain, free of all expense to the grantor, its successors and assigns, all such signals and watchmen as may be deemed necessary by the grantor, to guard against accidents or damages of all kinds liable to occur at or near said crossings, and on the further condition that the grantee would, at its sole expense, and without any contribution from the grantor, comply with all laws or ordinances which might thereafter be adopted providing gates, watcTwien, signals, or any device of any Icind at said crossings.
The demand of the plaintiff in that case was based upon a contract of date July 31, 1895, and, in the alternative, upon the allegation that—
“the continued use of said crossing by’ the defendant and its predecessor made it necessary for the plaintiff company to install said appliances, which otherwise would not have been *522 required, and that the defendant has teen benefited thereby to the full extent of the cost of the same.”
The contract between the original parties having been held not binding on the New Orleans Terminal Company, defendant in that case, because not recorded, the court, in discussing the alternative ground of liability of defendant company said:
“The only contention left is the right of the plaintiff, as a matter of law, to impose on the defendant the entire cost of constructing,. and maintaining an interlocking signal system, which, according to the statement of facts, ‘was in fact necessary and required ty law * * * to properly guard the crossing aforesaid.’
“We learn from the argument of counsel that the ‘law’ referred to is a rule adopted by the Railroad Commission of the state, which, we assume, throws ho light on the question of cost now under consideration.
“The Legislature has not deemed it necessary to define the rights and obligations of railroads, whose tracks intersect, connect, or cross. The Railroad. Commission has not, so far as we are informed, made any rules on the subject.”
The court then reviewed the ordinances of the city of New Orleans in force in 1895, and found that the expense of maintenance of crossings is divided equally by street railroads crossing each other, under said ordinances. Reasoning from analogy, the court' held that the same rule should apply, where the steam roads cross in a public street, as to the burden of maintenance, there being “no special provision for maintenance, where a steam railroad crosses a street railroad.”
As shown by the. record in that case, the interlocking devices were installed prior to order No. 450 of the Railroad Commission, of date June 21, 1905, discussed herein later.
This decision clearly states that it was not based upon any law or ordinance, for there was none, but solely upon equitable considerations, in the absence of a positive law on the subject. The court distinctly declares that:
“Where a crossing has been once established between two railroads, with equal rights to use the same public streets, the maintenance of such crossing is in the interest of both railroads, and equity demands that the cost of the same should be equally divided between them.”
In the case of the Louisville & Nashville Railroad Co. v. New Orleans Terminal Co., above cited, the court was not dealing with structures necessary for the original crossing, but with the installation of an interlocking signal system constructed by plaintiff company on a public street crossing, and differentiates the two cases. The necessity for such a structure was admitted by defendant company in that case, and its liability for one-half of the cost is judicially confessed.
In the present case, however, we are dealing with the mere maintenance of a flagman, and not of a stationary structure, admittedly necessary at a public crossing. The necessity for a flagman at this point is disputed by defendant company, in the present case. In our opinion, the evidence shows that no flagman is needed at this particular crossing for the protection of the public.
The double tracks of the Pontchartrain Railroad Company are located on Elysian Field avenue, and the double tracks of the New Orleans Terminal Company run along Marigny avenue and across Elysian Field avenue. The public crossing in dispute is at the intersection of these avenues, which are unpaved and the neighborhood is very sparsely settled. There is no roadway at all at this crossing. There is no possibility of vehicular traffic over this crossing, as the tracks at this point are possibly four feet higher than the surface of the ground at the intersection of the crossing.
As indicated by pencil marks on the blueprint filed in evidence, there is a vehicular path on the Lake side of the New Orleans Terminal Company’s tracks. It crosses *524 these tracks some distance from the crossing in question, and then traverses the tracks of the Pontchartrain Railroad Company about 50 feet from the crossing and curves into Elysian Field avenue.
[1] We fail to see, therefore, in what way this crossing can be deempd dangerous to the public, when it is physically impossible for the public to pass over it. Nor do we see in what wayv the maintenance of a stationary flagman at this crossing at considerable expense can be of “mutual benefit,” when defendant company can stop its trains before reaching the crossing, and send forward one of its employees on the train to flag the crossing, at no extra expense, if it is deemed advisable to- take such precaution.
Under this view of the ease, defendant company is not liable from any equitable-standpoint, and it becomes unnecessary to consider the plea óf prescription urged by said company against the claims of plaintiff.
We find printed at page 28 of plaintiff’s brief order No. 450 of the Louisiana Railroad Commission, issued by it on June 21, 1905.
This order is mentioned only in a motion for a new trial. It was not filed in evidence, but was referred to in said motion for the purpose of showing that the district judge erred, in view of the provisions of said order, in stating that in this particular case the defendant company was at liberty to incur the risk of negligence, by not placing a stationary flagman at this crossing, if it saw fit, and subject itself to the penalty of being mulcted in- damages in case of accident.
[2] Pretermitting the objection that the lower court could not legally take judicial cognizance of said order, we fail to find any provision contained therein requiring railroads . using the same' crossing to maintain and pay stationary flagmen at same, and to divide between them the cost of such expense. Under said order, in the absence of an interlocking device, trains are required to stop 200 feet before crossing the track or tracks of another railroad at grade; and “if the view is obstructed, trains must not proceed until a flagman is sent ahead and the way known to be clear: * * * Provided, that when a grade crossing is protected by an interlocking device, which has been approved by the Railroad Commission, trains may proceed over such crossings without stopping.” It is clear from these provisions, as the flagman “is sent ahead,” when the view is obstructed, , that even in such cases, the order does not require the maintenance of stationary flagmen at all, but a railroad company, after stopping its train at the prescribed distance before reaching the crossing, may'send any of its employees aboard the train ahead to act as flagman. The order of the Louisiana Railroad Comrnision, therefore, does not create any joint liability between railroads to maintain stationary flagmen at crossings used in common.
The public is equally as well, if not better, protected, when the train is stopped, and the flagmen sent ahead, as it Would be by a stationary flagman at the crossing. Accidents also are as well avoided. Why, then, should defendant ^company be required to incur the extra expense of a stationary flagman? Here, we have positive law on this subject, and not equitable considerations to deal with as in the case of Louisville & Nashville Railroad Co. v. New Orleans Terminal Co., 120 La. 978, 45 South. 962.
Under the order of the commission no railroad company is permitted to install, at its discretion, any interlocking device, and then condemn another railroad company to pay for use of same against its will.
Such devices must be established by order of the commission, after it determines in due course the necessity for the installa *526 tion of the same, and the expense must be divided as directed in said order. Sections 2 and 8 of order No. 450.
If the allegations of plaintiff’s petition are taken as true, the present case is brought clearly within the decision in the case of Louisville & Nashville Railroad Co. v. New Orleans Terminal Co., 120 La. 978, 45 South. 962. The exception of no right or cause of action, therefore, should have been overruled.
The merits of the present case show, however, that there was neither public necessity, nor mutual benefit to plaintiff and defendant companies, in the maintaining of a stationary flagman at said crossing. Moreover, we have the positive law as set forth in the order of the Railroad Commission, not requiring the maintenance of stationary flagmen at crossings.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and it is now ordered that there be judgment in favor of defendant company, Pontchartrain Railroad Company, rejecting the demands and dismissing the suit of the plaintiff, the New Orleans Terminal Company, at its cost, both in this court and in the lower court.
Rehearing refused by'Division A, epmposed of O’NIELL, C. J., and ROGERS and BRTJNOT, JJ.