State ex rel. Johnson vs. Judge.

No. 10,245.

THE STATE EX REL. A. L. JOHNSON VS. N. H. RIGHTOR, JUDGE
OF CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, DIVI-
SION D.

Determining whether relator is or not entitled to a peremptory mandamus compelling the
respondent judge to grant him a writ of injunction, depends upon whether the *law* enti-
tles him to it, *as of right*. If the law gives the respondent the discretion to grant or
refuse it, the mandamus will not go.

In a mandamus proceeding we are not to enquire whether, in dissolving the writ, the respon-
dent exercised a sound and legal discretion, but to simply ascertain whether he had *any*
*discretion at all*.

APPLICATION for Mandamus.

*Braughn, Buck, Dinkelspiel & Hart* for the Relator.

*Carleton Hunt* for the Respondent.

The opinion of the Court was delivered by

WATKINS, J.   A. L. Johnson filed a petition in the respondent's
court, in which he claimed a large sum against the city of New Orleans,
and requested the issuance of a writ of injunction against her, on cer-
tain grounds therein stated.   The respondent granted an order direct-
ing the defendant to show cause on a day fixed, why the writ should
not issue; and upon due hearing thereof, he refused to grant it.   The
relator assigns here that this act of the respondent was arbitrary and
illegal, and "that there is absolutely no remedy or relief in the ordi-
nary course of legal proceedings to protect relator's right, except the
injunction applied for;" and that his only means of obtaining this is
by mandamus.

The respondent returns, substantially, that the relator's petition "is
inadequate and fails altogether to justify an injunction," and that "it
discloses no cause of action," because it will appear by reference to the
records in certain *other* suits and proceedings named, that the demands
of the relator against the city are "charged to be fraudulent," and that
this "is an issue under the law, for the (City) Council to pass upon,
and not" himself, as judge.

He further returns "that relator has not brought himself within the
terms and provisions of the Code of Practice entitling him to the ben-
efits of the writ of injunction, as of right;" and he avers that he is not
entitled to the writ under any of its provisions unless it be those of
Article 303, which vests in the court of first instance, discretion in
determining the necessity for its issuance; that in refusing the writ

applied for by relator he acted within the discretion given him by law, and that his refusal was neither arbitrary nor illegal; and this exercise of judicial discretion cannot be reviewed and altered by mandamus.

Relator has annexed to his petition a copy of his petition for injunction, and made it a part of same. From it we obtain the following statement of his case, as presented to the respondent, viz:

He claims to be the transferee of a large number of claims against the city for about $40,000, for services rendered by the original holders in the months of March and April, 1888, in the departments of improvements and police.

That "under the laws prescribing and regulating the financial administration of the city of New Orleans, her revenues are annually fixed and appropriated by a general ordinance called the Budget of the year, and that the amounts so appropriated to the particular objects stated in said Budget remain dedicated thereto, and cannot be diverted to any other cause or object, as long as any claims against said appropriation exist."

He avers "that in accordance with said law a budget of appropriations was adopted in 1887, for the year 1888, setting apart certain sums for the Department of Improvements and the Department of Police," and that in accordance with said appropriations said expenses were incurred, but the City Council "has failed and refused to pass appropriate ordinances against said general appropriation in the Budget to direct the payment of the rolls for March and April, 1888, in which his claims appear," but has "authorized expenditures against the Budget appropriations for improvements and police for subsequent months * * * by reason of which the said appropriations will be totally absorbed and leave nothing whatever to pay said rolls of March and April."

Under this state of facts the relator seeks to be recognized as the transferee of said claims and the creditor of the city therefor, and to recover judgment directing "payment thereof, to be made as if ordinances directing same had been passed in due and proper time, before the passage of any ordinances directing payments of *subsequent* work or service out of said Budget appropriations," etc.

In aid of this specific relief relator prayed for the issuance of a writ of injunction "prohibiting said city from making any further special appropriations against the general appropriation in said Budget contained to the credit of the departments of public works and police, or from making any payments on ordinances already passed, for services rendered subsequent to that herein claimed, until such amount as is required to pay petitioners shall have been set apart and reserved."

The argument in support of his right to an injunction is that if the labor and police rolls of March and April are not paid from the revenues of 1888, as the law stands, he cannot be paid *at all*, and hence he is in danger of suffering an irreparable injury.

On this state of facts the question of law raised is, not whether the plaintiff was entitled to his injunction at all, but, rather, was he entitled to it as a matter of right, and had the respondent the discretion to refuse it. In a mandamus proceeding we are not at liberty to enquire whether, in disallowing the writ, the respondent exercised a sound and legal discretion, but to simply ascertain whether he had *any* discretion in the premises. His *exercise* of discretion can only be reviewed on appeal.

Such we understand to be the clear import of our opinions in City of New Orleans vs. Great Southern Telephone and Telegraph Company, 37 Ann. 571; and State ex rel. Savage vs. Rightor, judge, 38 Ann. 916.

Code of Practice, 298, provides that "injunction *must* be granted and directed against the defendant himself, in the following cases," enumerating them. Article 299, *et sequentes*, provide that "the injunction *may* be directed," etc., * * * in the following cases.

But the injunction prayed for by the relator does not fall within the denomination of any of the causes assigned under the former; it comes, possibly, within the scope of Article 303.

It provides that "besides the cases above mentioned, courts of justice *may* grant injunctions in all other cases when it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit * * * doing some other act injurious to the other party."

In Bush vs. Guinault, 29 Ann. 795, the Court, in placing an interpretation on the final clause of that article, say: "Under this clause of Art. 303, it is clear, therefore, that a discretion is vested in the judge to determine whether the injurious act set forth is one proper for the exercise of the remedy of injunction."

Therefore, applying this interpretation of C. P. 303, to the case in hand, and the question propounded is answered in the negative; *i. e.*, that the relator was not entitled to his writ of injunction as a matter of right.

And, inasmuch as the respondent was vested with *discretion* in the matter of the allowance *vel non* of the writ, relator cannot control his exercise of it by mandamus. High's Ex. Legal Rem. sec. 24; State ex rel. Daboval vs. Police Jury, 39 Ann. 765.

It is therefore ordered that the rule on the respondent to show cause be discharged, and a peremptory mandamus refused at relator's cost.