cided, and neither party can now complain of the result.

It is not seriously contended that there is any error in the report of the surveyor (Eustis). In any event, the errors, if such exist, have not been pointed out by defendant.

For the reasons assigned, the judgment of the Court of Appeal is affirmed, at the cost of the applicant.

O'NIELL, J., dissents from the ruling that defendant's title deeds were not admissible.

---

(83 South. 647)

No. 23829.

DAUENHAUER et al. v. ROSSNER, Clerk, etc.

(Dec. 5, 1919. On Rule for Contempt, Jan. 5, 1920.)

*(Syllabus by the Court.)*

1. MANDAMUS  37—ISSUANCE OF INJUNCTION WILL NOT BE COMPELLED WHERE DISCRETION IS INVOLVED.

Mandamus will lie to compel the issuance of an injunction, which has been refused by a judge of the first instance, where his duty to issue it is purely ministerial, and imposed in terms so specific and mandatory as to leave no element of discretion; but, where the question, of issuance, vel non, involves the exercise of judicial discretion, the action of the judge is not subject to control by mandamus, and that writ will not issue; the principle underlying that rule being that, whilst a superior may review and reverse the judgment of an inferior court, thereby substituting its judgment for that which it sets aside, it cannot compel an officer, whose oath and obligation oblige him to decide according to the best of his ability and understanding, to render a judgment which his understanding and conscience do not permit him to approve, and which the law contemplates that he shall render with such approval, and not otherwise.

On Rule for Contempt.

2. CONTEMPT  28(1)—PERSON IGNORANT OF STAYING ORDER AND HAVING NO REASON TO KNOW THEREOF IS NOT GUILTY.

A person who is in ignorance of the making by this court of a staying order, and has no reason to know or believe that such an order has been made, will not be held liable, as in contempt, for proceeding without regard thereto.

Action by J. B. Dauenhauer, Jr., and others against Charles W. Rossner, Clerk of Court and ex officio Registrar of Voters. An injunction was denied, and plaintiffs apply for writs of certiorari, mandamus or prohibition and for a rule for contempt. Application and rule dismissed.

C. A. Buchler, of Gretna, and A. T. Higgins, of New Orleans, for applicants.

Dart, Kernan & Dart, of New Orleans, for clerk, on rule.

MONROE, C. J. Relators, seven in number, alleging that they are qualified voters of the parish of Jefferson, affiliated with the Democratic party and candidates for various Democratic nominations in that parish, apply for writs of certiorari, mandamus, and prohibition, for the review and reversal of the ruling of the judge of the Twenty-Eighth judicial district court in refusing to issue a writ of injunction, restraining the clerk of court, ex officio registrar of voters, from holding his office of registrar at certain places, upon certain dates, and conducting the business thereof through a clerk, save in the event of his inability, as per the following advertisement, appearing in the official newspaper of the parish, a copy of which is annexed to the petition (quoting as much as is here pertinent) to wit:

"Registration Notice.

"Office of Clerk of Court and Registrar of Voters, Parish of Jefferson, La.

"Gretna, La. Nov. 3, 1919.

"Notice is hereby given that I will be present in person or by clerk, at the following named places, between the hours of 11 a. m. and 6 p. m., and later if necessary, on the dates herein given, for the purpose of registering voters:
\*    \*    \*    \*    \*    \*

"Fourth ward. Precinct 1, J. K. Gaudet's office, at residence, Dec. 2; precinct 2, E. M.,

Consulman's office, at residence, Dec. 3; precinct 3, Vic Pitre's Hall, Dec. 4.

"Sixth ward. Precinct 1, Victor Kerner's place, Dec. 13.

"Seventh ward. Precinct 1, O'Dwyer's Hall, Dec. 6.

"Eighth ward. Frank Fargot's place, Dec. 9."

The complaints as set forth in the petition for injunction are that the law requires the registrar to hold his office for at least one day in each precinct of the ward "at or near" the polling places, and prohibits the holding of it in "unusual" places, and that, of the places designated for that purpose in the advertisement, two are each "nearly" a mile from the polling places, one is "more than" a mile, one is "3 miles" "none is *at* the polling place, and all are at the residences or places of business of persons who are opposing petitioners for nominations, which is contrary to the letter and the spirit of the law. They further complain that the registrar has no right to allow any one else to register voters, except in case of his sickness or inability to act, and should be enjoined from allowing his clerk so to register, as he has advertised. Relators allege that the judge here made respondent ordered a rule nisi to be issued, to which an exception of no cause of action was filed, and upon the return of which he arbitrarily and illegally refused to issue a writ of injunction as prayed for; that no amount of money is here involved, and they have no adequate remedy by appeal in any event, since the registration is advertised to begin on December 2, and the time is insufficient for the presentation of the matter by appeal. In accordance with the prayer of the petition, the judge was ordered to send up the record and show cause why the relief prayed for should not be granted, and he has complied with that order, and shows cause, in effect, as follows:

That he found nothing in the advertisement to authorize the assumption that the registrar intends to have a clerk act in his stead save under the circumstances contemplated by section 18 of the registration act (being Act No. 195 of 1916), which reads:

"Sec. 18. * * * That in case of sickness or inability of the * * * registrar to act, he may appoint a deputy * * * to perform his duties."

Further answering, he refers to section 16 of the statute above mentioned, and avers that its requirements have been strictly complied with. That section, so far as here pertinent, reads as follows:

"Section 16 * * * That the * * * registrar * * * shall, at all times keep his office open daily Sundays and legal holidays excepted, from eight o'clock a. m. * * * He shall keep his office at the court house. In every year in which a general state election is held or a primary election is held for state officers or representatives to the Congress of the United States he shall, 60 days before the closing of the registration, establish his office, for at least one day, at or near each polling place; during the last two weeks of such period, if two weeks of the period remain after holding his office for one day at or near each polling place he shall keep his office at the courthouse. He shall, during said sixty days publish at the expense of the parish, in the official journal thereof, if there be one, a list of the places of registration and the length of time same shall remain open, if there be no official journal in any parish, the * * * registrar * * * shall post the list provided for above at or near the polling precinct provided that no person shall be permitted to register within 30 days of any general or primary election held in this state."

He further avers that whether the registrar shall establish his office (temporarily) "at" the polling places, or "near" them, and, if the latter, how near, is left by the statute to his discretion; that the police jury recently established a polling place in a cow stable; that other polling places are public schoolhouses, which, not being in use as schools on election days, are available for voting purposes, but are not available for registration purposes on school days; that it is not always easy to find a place suitable and accessible that the owner is willing to

surrender for a day for those purposes; that the parish of Jefferson is 80 miles in length by 16 miles in width, and embraces 1,280 square miles of territory; that there are 14 polling places in the parish, or 1 for, say, each 91 square miles, and that the selection of 4 out of the 14, of which 2 are "nearly 1 mile," 1 "over" 1 mile, and one "3 miles," from a polling place is a reasonable and creditable exercise of the discretion vested in the registrar in the matter of complying with the statute on that subject; the word "near" being one of relative and varying signification, conveying one idea when used to express proximity in a small place and another when so used with reference to a place of greater dimensions. "In Gretna [says the respondent], about 3 miles square, there are 3 polling places, thus increasing the average territory of the other precincts in the rural districts to more than 91 square miles," and he concludes that the allegations as to the distances of the four places mentioned from the polling booths indicates, all things considered, an admirable compliance with the law. Concerning the complaint, that the establishment of the registration office in the homes of the candidates is in violation of section 30 of the statute, the respondent quotes the section, which reads:

"Section 30. * * * That the registrar * * * shall not open his office on any boat or water craft and during 60 days before the general election, shall not go to unusual places under the pretense of affording opportunity to voters to register, but shall remain at each appointed place during the full period named in his public notice and shall not attend places to register voters which he has not given notice of as required by this act. Any registrar violating the provision of this section shall be deemed guilty of a misdemeanor," etc.

—and he says:

"No complaint is made that the registrar intends to establish his office on any boat or water craft. The balance of this section prohibits the registrar from going to other places than the ones named by him in his public notice, and consequently does not apply to the complaint of relators. * * * When the registrar gives public notice that he will be present at John Doe's home on a certain day, for the purpose of registering voters, John Doe's home becomes, for that day, the official registration office, and the registrar, who is a heavily bonded officer, will be presumed to conduct it in the usual orderly manner."

Respondent suggests that, if voters would be embarrassed by going to the residence of a candidate whom they are opposing, in order to register, they would have that difficulty to overcome in going even to the courthouse, since the clerk and ex officio registrar has his office there and is a candidate, or in going to the office of the sheriff and tax collector (also a candidate) to pay their poll taxes, and concludes his return with the expression of his opinion that he is without authority to interfere by injunction with the discretion vested in the registrar in the matter of the discharge of his official duties, and that the objections raised by relator are, under the conditions stated, frivolous and intended to embarrass the registrar.

### Opinion.

[1] The decisions of this court are very numerous to the effect that mandamus does not lie to compel the judge of an inferior court to render a particular judgment, in cases in which the law authorizes him to exercise his discretion.

"Our jurisdiction," said Merrick, C. J., "is appellate only, and the district court, as a court of original jurisdiction, must be vested with a legal discretion to render a judgment upon the trial of every case, according to the nature of the demand or the merits of the defense. All that this court can do in aid of its appellate jurisdiction is to compel the district court to pronounce upon the controversy. The form and subject-matter of the decree is within the breast of the district judge, subject only to be revised on appeal." State ex rel. Simmons v. Judge, 13 La. Ann. 483, and State ex rel. Turpin v. Judge, 13 La. Ann. 481.

In a later case, Ludeling, C. J., stated the proposition as follows:

"A judge may be compelled by mandamus to act, in a particular case, if he refuses—but, having acted, his judgment cannot be revised except on appeal. One cannot be compelled by mandamus to change his judgment in a matter where he has the right to judge." State ex rel. Benton v. Judge, 26 La. Ann. 116, quoted as authority in Schwan v. Schwan, 52 La. Ann. 1192, 27 South. 678.

In a still later case, the plaintiff sought an injunction to prohibit the sale of her property under executory process, alleging fraud, under C. P. 738, 739, and the judge refused the writ, after hearing the application on a rule to show cause, whereupon plaintiff applied for a mandamus, in passing upon which application it was said by this court:

"It has often been held that the writ of mandamus will issue only to compel the performance of a duty imposed by law, and in which no discretion is to be exercised. The issuance of an injunction is not such a duty [no reference being made in the opinion to C. P. 298]. The judge is to exercise a sound legal discretion, subject, of course, to revision by this court, in cases properly brought up. A mandamus, therefore, will not issue to compel an inferior judge to grant an injunction. This court is not vested with a supervisory control over all inferior courts, so as to compel them to give remedies and do acts about which they have discretion." State ex rel. Beebe v. Judge, 28 La. Ann. 905, 26 Am. Rep. 115.

The year following the adoption of the Constitution of 1879, containing an article (90) which conferred upon this court "control and general supervision over all inferior courts," with power "to issue writs of certiorari, prohibition, mandamus, quo warranto and other remedial writs," a case was presented in which an injunction, applied for under C. P. 303, was refused, and a remedy by mandamus was sought in this court, and it was here said, by Fenner, J., as the organ of the court, that (in view of the then new Constitution of 1879):

"Mandamus might be the proper remedy in a case clearly sufficient on the facts, and where no question of law was involved."

It was held, however, that the case before the court was not such a case, and the mandamus was refused. State ex rel. City of New Orleans v. Judge, 32 La. Ann. 549.

In 1884 an application was made to this court for a mandamus to compel the issuance of an injunction, which had been refused, after a hearing upon a rule to show cause, and, though the writ was denied as not justified by the case presented, the court held that, under article 90 of the Constitution, it might be issued in a "clear" case, including in that description a case of refusal by a trial judge to issue an injunction to which the applicant was entitled, and any case in which a person would otherwise suffer wrong or injury and be without adequate remedy. State ex rel. Murray v. Lazarus, 36 La. Ann. 582.

Two years later, however, a case was presented of an application for a writ of mandamus to compel the issuance of an injunction which the trial judge had refused, and it was said in the opinion of the court:

"We search the articles of the Code of Practice and the statutes without finding any provision authorizing injunction in the specific case presented by relator, except the last clause of article 303; and, having held that, as to applications under this general clause, 'discretion is vested in the judge to determine whether the injurious act set forth is one proper for the exercise of the remedy by injunction,' that at once removes the case from the pale of our supervisory jurisdiction. We use this power only to enforce the performance of duties imposed by law on inferior judges—never to control their discretion. The judge had the right to exercise his discretion in the matter, and, having done so, in evident good faith the question whether he erred or not is utterly irrelevant in this application."

The court then refers to the case of State ex rel. Murray, supra, saying:

"The case of State ex rel. Murray v. Judge, 36 La. Ann. 578, on which relator relies, contains

nothing inconsistent with the foregoing. The court was there occupied with the general question of whether in any case mandamus would lie to compel the granting of any injunction, and we held that, 'in clear cases,' it would; but we by no means held that it would lie in all cases, and, indeed, refused it in that very case." State ex rel. Savage v. Rightor, 38 La. Ann. 918.

In the same volume there is reported a case in which the court found that the duty of the trial judge to issue an injunction arose under C. P. 298.10, was purely ministerial, and so clear that no element of discretion was left in the matter, and the mandamus was issued. State ex rel. Gaynor v. Young, 38 La. Ann. 923. And in the volume next following it was found that the question of the granting or withholding of a certain privilege by a police jury necessarily involved the exercise of a very delicate discretion, and that mandamus would not lie to control its decision; the conclusion of the court being placed squarely upon the doctrine as thus enunciated by Mr. High, to wit:

"The most important principle to be observed in the exercise of the jurisdiction by mandamus and one which *lies at the very foundation of the entire system of rules and principles regulating the use of this extraordinary remedy is that which fixes the distinction between duties of a peremptory or mandatory nature and those which are discretionary in their character*, involving the exercise of *some degree of judgment* on the part of the officer or body against whom the mandamus is sought. * * * Stated in general terms, the principle is that mandamus will lie to compel the performance of duties *purely ministerial* in their nature, *and so clear and specific that no element of discretion is left in their performance;* but that, as to all acts or duties *necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, mandamus will not lie.*" (Italics as in opinion.) State ex rel. Daboval v. Police Jury, 39 La. Ann. 765, 2 South. 308.

In State ex rel. Johnson v. Rightor, 40 La. Ann. 852, 5 South. 417, in which relator prayed for a mandamus to compel the issuance of an injunction, it was said:

"In a mandamus proceeding we are not at liberty to inquire whether, in disallowing the writ, the respondent exercised a sound legal discretion, but to simply ascertain whether he *had any* discretion in the premises. His exercise of discretion can only be reviewed on appeal. Such we understand to be the clear import of our opinion in City of New Orleans v. Great Southern Telephone & Telegraph Co., 37 La. Ann. 571, and State ex rel. Savage v. Rightor, Judge, 38 La. Ann. 916."

The doctrine as stated in the cases of State ex rel. Savage, State ex rel. Gaynor, State ex rel. Daboval, and State ex rel. Johnson, last above quoted, has been frequently affirmed, and seems now to be entitled to recognition as established jurisprudence. State ex rel. Railroad Co. v. Smith, 104 La. 370, 29 South. 40; State ex rel. Millaudon v. Judge, 105 La. 314, 29 South. 724; State ex rel. Denis v. Judge, 105 La. 733, 30 South. 101; State ex rel. Bachet v. Judge, 110 La. 953, 34 South. 953; State ex rel. N. O. & C. R. Light & P. Co. v. Judge, 110 La. 722, 34 South. 750; State ex rel. Glancey v. Judge, 113 La. 1066, 37 South. 972; Lewis v. D'Albor, 116 La. 683, 41 South. 31; Hanson v. Police Jury, 116 La. 1083, 41 South. 321; Manion & Co. v. Board, 119 La. 879, 44 South. 515; Baldwin Lumber Co. v. Todd, 124 La. 543, 50 South. 526; Algiers, etc., Co. v. R. & L. Co., 137 La. 579, 68 South. 960.

And, as the doctrine rests upon the proposition that, while a superior may review and reverse the judgment of an inferior court, thereby substituting its judgment in the place of that which it sets aside, it cannot compel a judge whose oath and obligation oblige him to decide according to the best of his ability and understanding to render a judgment which his understanding and his conscience do not permit him to approve, and which the law contemplates that he shall render with such approval, and not otherwise.

The respondent herein being thus situated and the judgment which we are asked to

compel him to render being one in which he is charged with the exercise of judicial discretion, it is ordered that the staying order herein made be now rescinded, and that this application be dismissed at the cost of the applicants.

DAWKINS, J., concurs in the decree.

## On Rule for Contempt.

MONROE, C. J. [2] A rule nisi having issued herein, directing the judge of the district court to show cause why he should not be required to comply with relator's prayer for a preliminary injunction, and ordering that, in the meanwhile, and until this court should pass upon the matter, further proceedings be stayed, the judge made due answer and return thereto, and the case was taken under advisement. Thereafter, and while matters were in that condition, relators ruled the clerk and ex officio registrar of voters to show cause why he should not be punished for contempt, the allegation being that he had violated the staying order by registering voters, on December 2, at a place whereat it was the purpose of relator's petition and of the staying order to prevent such registration. Before the expiration of the delay for the return to that rule, this court handed down its opinion and decree denying relator's demands and dismissing this proceeding, following which the clerk made his returns to the rule for contempt, saying:

"That respondent did not know that he had been made party to the proceeding in this court; that he was not advised by either plaintiffs' counsel or his own counsel that the proceeding was pending, and, if respondent had received any information whatever regarding the case, he would not have known that he was affected by the same because he had never seen the petition filed herein, nor the order of court entered thereon, and, in short, was in complete ignorance of the issue as presented to your honors and as to the substance of the same and as to the relief therein prayed for. Respondent further says that he was not advised by his own counsel that he had received any papers in the case, and, upon inquiry, finds that said counsel never saw the petition before it was filed in this court; that he did not accept service of it, and respondent is informed that, after the said petition was filed, respondent's counsel inquired at the clerk's office of the court for the original, in order to be informed of its contents, and was informed that the document was in the hands of the court, and could not be produced. Respondent says further that he was advised by his counsel that the proceeding in the lower court did not, in any way, restrain respondent from fulfilling his duties under the law, as registrar of voters for the parish of Jefferson; that no injunction was granted by the lower court, and respondent did not know that any had been granted in this court. Respondent further says that, as soon as he received the order of this court, of December 2, 1919, he suspended further registration in the said registration office of the parish, and awaited the further action of your honors therein. Wherefore * * * respondent prays," etc.

The return is verified by affidavit and has not been traversed.

There are cases in which persons who are not made parties by actual service of process to orders of courts are held responsible for violations of the same, but in this instance, defendant in rule is shown, without attempt at contradiction, not only to have been in ignorance of the staying order which he is alleged to have violated, but to have had no reason to know or believe that any such order had been made.

The rule for contempt is therefore dismissed, at the cost of plaintiff.