56 So.2d 246

**STATE v. CRONIN.**

**In re PALLOTTA.**

**No. 40480.**

Dec. 10, 1951.

See also, 220 La. 233, 56 So.2d 242.

Bernard J. Bagert, New Orleans, for relator.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severen T. Darden, Dist. Atty., Geo. McCulloch, Jr., Asst. Dist. Atty., Alexander E. Ralston, Jr., Asst. Dist. Atty., all of New Orleans, for appellee.

PONDER, Justice.

Robbie Jewel Cronin was charged in the Juvenile Court, Parish of Orleans, with being a delinquent child and placed in the Convent of Good Shepherd to await the hearing on the charge. Thereafter, she was brought to the juvenile court for a hearing on the charge of delinquency. Her attorney requested the court to permit him to privately interview her, his client. It appears from the evidence that the interview took place in the third office from the entrance of the court chamber, approximately fifty feet from the entrance. Two of the sisters of the juvenile, Edward J. Haley, Jr., and his mother Mrs. M. De Gruy, were present in the room where the interview took place. The relator, Reverend Philip Pallotta, was called in, presented with a license authorizing the marriage of the juvenile to Haley, accompanied with an affidavit of the father of the juvenile expressing his consent to the marriage. The relator performed the marriage ceremony and left the court building. The juvenile and her attorney returned to the courtroom and the case against her was called for trial. Whereupon her attorney immediately handed to the court the documents relating to the marriage and objected to further proceedings on the ground that the court no longer had jurisdiction over the juvenile. The objection was overruled. The case was tried and the juvenile was adjudged delinquent. The judge of the juvenile court thereafter instructed the district attorney to bring contempt proceedings against the relator. A rule was issued and, upon trial of it, the relator was held to be in contempt of court and sentenced to serve ten days in the parish prison. The relator sought and obtained a review of the proceedings under our supervisory jurisdiction.

The relator contends that the power of courts to punish for contempt is limited by law under Article 19, Section 17, of the

Constitution and that the legislature in pursuance thereof has limited the power of the juvenile court to punish for contempt to those who wilfully violate or refuse to obey or perform any order of the court as set forth in LSA–R.S. 13:1590. The state takes the position that the statute does not limit the inherent power of the juvenile court to punish for contempt and that under the provisions of LSA–R.S. 15:11–12, every court has the inherent power to enforce its orders and to see that the proceedings in the court shall be carried on decently, with dignity and in an orderly manner, and has the power to punish, as being a contempt, every interference with its process or orders, as well as every act interrupting or tending to interrupt its proceedings, or impairing the respect due to its authority. In view of the insufficiency of the evidence, it is not necessary for us to pass on this question. The record is barren of any evidence tending to show that the relator knew that the juvenile was being held in custody or that a charge was pending against her. There is nothing to show that the relator was cognizant of any objection to the marriage. The only evidence produced by the state with reference to the relator was the testimony of Mrs. De Gruy, the mother of Haley. She testified that she engaged the relator, a minister, to perform the marriage ceremony and requested him to be present at the juvenile court on that occasion. She testified that she did not inform him of the pending charge or that the juvenile was in the custody of the court. It appears from her testimony that the relator was called in to perform the marriage ceremony and, upon being presented with the marriage license and the sworn consent of the father of the juvenile, that the relator performed the ceremony. There is absolutely nothing in the record to indicate that the relator had any knowledge of any objection to the marriage or that he had any knowledge that the juvenile was in the custody of the court under a pending charge. This court has heretofore held that a person violating a stay order of which he had no knowledge or had reason to believe existed could not be held in contempt for violating the order. Dauenhauer v. Rossner, 146 La. 349, 83 So. 647. The Dauenhauer case involved the violation of an order. In view of that decision, it is not necessary for us to determine whether the relator violated any order of the court because, should we concede that relator's act constituted a violation of an order of court, he could not be held in contempt under the circumstances in this case.

For the reasons assigned, the judgment of the Juvenile Court, Parish of Orleans, is reversed and set aside; the writs are made peremptory and the relator is hereby discharged.