LAND, J.
The city authorities having notified the plaintiff to remove his fences and buildings as obstructions to the widening of Gentilly Road, plaintiff thereupon enjoined *389 the defendants from removing said structures on the ground of ownership of the soil on which they stood.
The defendants answered, denying plaintiff’s alleged title, and averring that the premises in dispute is a locus publicus.
There was judgment for defendants, and plaintiff has appealed.
In 1835 Congress confirmed the private claim of Juste Le Beau to a “tract of land” situate at a place called “Gentilly,” about 3 miles distant from the city of New Orleans, containing 6 arpents front, on the north side of the Gentilly highroad, by a depth of 20 arpents, and bounded on one side by land of Pierre Martel, and on the other side by lands forming “Suburb Darcantel.” The record does not show any sales from Le Beau, or the extent of his possession. The first link in plaintiff’s chain of title offered in evidence is a sale in 1808 from Paul Eos to Onofrio Zagame of two portions of land touching each other, measuring each one arpent on, or facing, the shell road of Gentilly, with 20 arpents of depth, and designated by Nos. 1 and 2 on a plan made by A. Castaign in the year 1864. Lot No. 1 passed to Antonio Zagame, and from him to the plaintiff, by reference to the same plan, which has been lost or destroyed.
The description in the original title calls for a tract of land containing 6 arpents front “on the north side of the Gentilly highroad.” The expression “on the north side” does not necessarily mean contiguity.
In this case a competent civil engineer testified that the original United States map and survey of the tract confirmed to Le Beau shows that the depth of 20 arpents was measured from “the far or lake side of Bayou Sauvage,” or on the side opposite to the Gentilly highroad. Hence the term “on the north side” was evidently intended to designate merely the direction. The same witness also testified that, according to the original United States map and surveys, a space about 250 feet wide, including the bayou, was left between the lines of survey on each side. It seems that a public road has existed from time immemorial on the south bank of said bayou, and probably dates back to the first settlement of the country. It has become necessary to enlarge the width of the present highway for the convenience of the public.
[1] The common council has full power “to open, and keep open and free from obstructions, all streets, public squares, wharves, landings, lake shore, river and canal banks.” Act No. 216 of 1902, § 14. The space reserved on each bank of the bayou was evidently intended for public uses, such as travel and access to the stream, commonly called “Bayou Sauvage.” On the earliest United States maps the same water course is styled “Bayou Chantilly.”
[2] The reservation of the bayou and the space along the banks, on the United States maps, and the silence and inaction of the government as to the disposition of the same, for nearly a century, are sufficient evidence of dedication to public uses. In the surveys made, the bayou was treated in the same manner as navigable streams, and the presumption is that the water course was of that character when the surveys were made.
[3] The plaintiff has no title to the land in controversy, and stands before the court as a mere trespasser on space reserved for public use, and the length of his trespass avails him nothing.
Judgment affirmed.