(86 South. 493)

No. 23979.

STATE ex rel. RUDDOCK ORLEANS CYPRESS CO. v. KNOP, Civil Sheriff, et al.

In re RUDDOCK ORLEANS CYPRESS CO.

(May 3, 1920. On Rehearing, Nov. 3, 1920.)

On Rehearing.

*(Syllabus by the Court.)*

Mandamus ⬖37—Supreme Court under its supervisory power may order judge of first instance to order issuance of injunction.

Although, as a general rule, mandamus will not lie to compel a judge of first instance to

147 LA.—34

order the issuance of a writ of injunction which he has refused, in a case left to his discretion, yet the rule is not without exception, and, in the exercise of its supervisory jurisdiction, this court will direct that such order be made where injustice will otherwise be done, in a judicial proceeding, and there appears to be no other adequate means of prevention.

Dawkins and Provosty, JJ., dissenting.

Suit for injunction by the State, on relation of the Ruddock Orleans Cypress Company against Louis Knop, civil sheriff of the parish of Orleans. Injunction refused, and plaintiff applies for writs of mandamus and prohibition to the civil district court, parish of Orleans, Division C, Hon. Fred D. King, judge. Former decree dismissing the application set aside and judgment for relator directing that respondent judge, having jurisdiction, order the issuance of a writ of injunction as prayed on relator's bond as the judge may require.

R. J. Perkins, of New Orleans, for relator.
W. W. Wall, of New Orleans, for defendant Howcott.

I. D. Moore, City Atty., and John F. C. Waldo, Asst. City Atty., both of New Orleans, amicus curiæ.

DAWKINS, J. Relator seeks a writ of mandamus to compel the judge below to grant it a temporary writ of injunction restraining the civil sheriff for the parish of Orleans from executing a certain final judgment of this court ordering the removal of certain obstructions from a part of Stroelitz street in the city of New Orleans, said final judgment having been rendered in the case entitled Miss Edith M. D. Howcott v. Ruddock Orleans Cypress Company, 146 La. 318, 83 South. 586, No. 22345 on the docket of this court. In its application for the injunction petitioner alleged that on the 24th of February, 1920, and before the judgment of this court had become executory, the commission council of the city of New Orleans

had passed an ordinance, No. 5654, authorizing the exchange of 50 by 300 feet of Stroelitz street, between Dante and Dublin streets, for a strip of petitioner's property of the same dimensions, forming a part of square No. 579, and abutting said Stroelitz street; that the ordinance had been promulgated according to law; that a temporary writ of injunction had been issued enjoining the passing of a proper act of transfer and exchange in conformity with said ordinance, but that the said writ had been subsequently dissolved on bond, and an appeal refused to the plaintiff in said writ, and that thereupon proper notarial act of exchange and transfer had been passed and entered into by relator and the said city by which the former had acquired the ground upon which the buildings and improvements are located which the said sheriff was about to remove and destroy; that relator had been informed by the said sheriff and his counsel that no heed would be paid to said ordinance, and that the obstructions would be removed. A rule nisi having issued, with stay or proceedings in the lower court, the matter is now before us for determination.

### Opinion.

The judgment of this court, in the case of Howcott v. Ruddock Orleans Cypress Company (No. 22345) 146 La. 318, 83 South. 586, is res judicata of the question of the existence of Stroelitz street at the point in question, and of the right of the plaintiff in that case to have the same opened to traffic. The only issue presented by the petition and application for the injunction was as to whether or not the city of New Orleans had the power and authority in any case to close and exchange part of an existing street for other property to be substituted in its stead. The power primarily rests in the Legislature to determine such matters, except that it cannot impair the obligations of contracts, or divest vested rights without first provid-

ing adequate compensation. Dillon on Municipal Corporations, §§ 1122, 1160, and 1163.

The powers of the city of New Orleans with reference to such matters is to be found in paragraph 1 of section 8 of Act 159 of 1912, as amended by Act No. 29 of 1918, and in paragraph 2 of section 50 of said Act 159 of 1912, as amended by Act 69 of 1916.

Section 8, par. 1, of said act, as amended, reads as follows:

"Sec. 8. The commission council shall also have power:

"1. To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, *by a two-thirds vote* to sell or change the destination of any street, sidewalk or property *which is no longer necessary for the public use to which it was originally destined, or which is needed for public buildings or public utilities owned by the United States, the state of Louisiana or the city of New Orleans, or for the establishment of a railway union depot, or for the enlargement or extension of any hospital which the city of New Orleans utilizes in whole or in part, for the care and treatment of destitute persons.*" (Italics by the court.)

Paragraph 2 of section 50, as amended, is as follows:

"*Substitution of Streets.*—In addition to the powers and authority granted to the commission council under any of the provisions of this charter, to sell or change the destination of any street or property under the conditions therein stated, the commission council shall also have power and authority *by a two-thirds vote of all the members elected thereto, if the commission council deems the same for the public benefit,* to allow the substitution of a new street or streets of equal or greater width for an existing street or existing streets, *upon a petition signed by every person owning real property in the square or squares of which such existing street or streets are boundaries,* the entire improvement to be made, and the extra cost thereof, including intersections, to be borne by the owners of real property fronting on such existing street or streets, all work to be done according to the plans to be approved by the commission council and upon lines and levels to be furnished by the commissioner of public property."

It would seem, from the above provisions of the city charter, that the commission council has the power, whenever a street is no longer necessary for public use, to abandon, close, or change its destination, or, by a two-thirds vote of all the members of the council, upon a petition signed by the owners of all the property in the square or squares forming the boundaries of the street proposed to be changed or substituted, to make the change or substitution. It is not necessary in the present instance, however, to decide whether one whose property is situated as is that of the plaintiff in execution, Miss Edith M. D. Howcott, must join in such petition, for the reason that, in our opinion, the relator has not, in its petition for injunction, made the necessary allegations as to: First, the manner in which the ordinance was adopted (by a two-thirds vote); and, second, that the same was petitioned for by the owners of all the property in the squares forming the boundaries of the street which it is proposed to change. The petition does not bring the case within the terms of the provisions of the charter of the city as quoted.

It was held in the case of Dauenhauer et al. v. Rossner, Clerk et al., 146 La. 349, 83 South. 647, as follows:

"Mandamus will lie to compel the issuance of an injunction, which has been refused by a judge of the first instance, where his duty to issue it is purely ministerial, and imposed in terms so specific and mandatory as to leave no element of discretion; but, where the question of issuance vel non involves the exercise of judicial discretion, the action of the judge is not subject to control by mandamus, and that writ will not issue; the principle underlying that rule being that, while a superior may review and reverse the judgment of an inferior court, thereby substituting its judgment for that which it sets aside, it cannot compel an officer, whose oath and obligation oblige him to decide according to the best of his ability and understanding, to render a judgment which his understanding and conscience do not permit him to approve, and which the law contemplates that he shall render with such approval, and not otherwise."

For the reasons assigned, the alternative writ of mandamus is recalled, and the application dismissed at the cost of the applicant.

On Rehearing.

MONROE, C. J. The events leading to the present situation are correctly stated in their chronological order in the opinion heretofore handed down. The judgment of this court in the suit of Howcott v. Ruddock-Orleans Cypress Co., 146 La. 318, 83 South. 586, appealed from division B of the civil district court, in which the defendant therein was ordered to remove the obstructions from a portion of Stroelitz street and allowed a delay of two months within which to comply with that order, became final by reason of the denial of the application for rehearing on January 5, 1920 (83 South. 586 [1]) and the ordinance authorizing the conveyance of that portion of the street to the defendant company (relator herein) in exchange for a strip of land of like dimensions (50 x 300 feet) taken from the adjoining square owned by the company was approved by the acting mayor on February 25, 1920. The original plaintiff then (in a suit which fell to division E of the civil district court), obtained a writ of injunction prohibiting the parties in interest from carrying the ordinance into effect by the execution of an act of exchange on the ground that it was unauthorized and illegal, which injunction was dissolved on bond given by the Cypress Company, and plaintiff's application for a suspensive appeal from the order of dissolution was denied, as was also an application to this court for relief with respect to that demand; and on March 22, 1920, the act of exchange was duly executed. On the following day the Cypress Company was notified by the sheriff (through counsel) that no heed would be paid to the ordinance, and that, unless restrained by an order of court, he would proceed, in execution

_____
[1] 146 La. 318.

of the judgment of January 5, to tear down the buildings upon that portion of Stroelitz street purporting to have been conveyed to the company in the exchange and forming part of that portion which the judgment ordered to be cleared; whereupon (on March 24) relator, relying upon the ordinance and conveyance as conferring a title not in existence when that judgment was rendered, applied for a writ of injunction to restrain the sheriff from so proceeding, and, its application having been denied, presented to this court the petition now under consideration for writs of mandamus and prohibition upon which the usual order to show cause, with a staying order, were made by the present writer.

The petition alleges, among other things, that the judgment (of January 5) has been complied with, and that all lumber and buildings and other obstructions on all the streets therein referred to have been removed, except from that portion of Stroelitz street between Dante and Dublin streets; and it is stated in the brief of counsel, and appears from the record in the original suit, that relator owns, not only the two squares here in question, but all the squares surrounding them within a radius of two squares. It is further alleged that the only question involved in the injunction suit to prohibit the execution of the ordinance is that of the validity of the ordinance; that the suit is pending in division E of the district court, but that the judge presiding in division B (where the original judgment was rendered) has erroneously assumed to decide the question involved therein while sitting in division C, to which the present application was allotted. According to the prayer of the petition, the judges of divisions B and C are both made respondents herein, and they have made a joint return, in which, after recapitulating the events hereinabove recited, they show cause as follows why the relief prayed for should not be granted, to wit:

That the ownership of the streets of New Orleans is vested by law in the inhabitants; that the city council is a body of limited powers and can exercise only those conferred by statute; that no power has been thus conferred on it to barter or exchange a public street, which but recently and contradictorily with one of the parties to such transaction had been adjudged by this court to be subject to public use and to a servitude of way in favor of an owner of property fronting thereon; that, when relator urged the consummation of the exchange herein set up for the purpose of thwarting the execution of that judgment, all parties must be held to have had knowledge of the law and fact that it was entirely ultra vires of the city council to sell, barter, or exchange any portion of a public street of the city of New Orleans to a private commercial corporation to suit its private purposes, and therefore for respondents to interfere with the execution of the judgment of this court would constitute a contempt of the court upon their part and upon the part of the relator and its attorney.

"That respondents have carefully examined the law of the state and find the only law applicable in their opinion to be: [And respondents quote C. C. art. 458, paragraph 1, § 8 of Act 159 of 1912, as amended by Act 29 of 1918, and paragraph 2 of section 50 of Act 159 of 1912, as amended by Act 69 of 1916.]

"That the conclusion arrived at by respondents * * * was that Stroelitz street could only be changed by the * * * council with the consent of all property owners fronting on that street, and it has never been pretended or intimated that the plaintiffs in either of the suits of Howcott, Ruddock-Orleans Cypress Company, or any other property owners had given consent to the exchange or substitution pretended to be authorized by the commission council," etc.

The city of New Orleans, through its counsel, comes into court and prays to be heard, alleging that, though not made a party to the proceeding, it is a party defendant in the injunction suit wherein the validity of its ordinance is attacked and is expected to be maintained by it; and, an order that its position may be better understood here and as a friend of the court, says that the ordinance in question was passed by the council regularly in good faith, under statutory authority, and in the exercise of a discretion vest-

ed in said council, especially under the authority of Act 83 of 1916, section 8 of Act 159 of 1912, as amended by Act 29 of 1918, and section 50 of Act 159 of 1912, as amended by Act 69 of 1916; that it was passed for the purpose of moving Stroelitz street, between Dante and Dublin, towards the river for the distance of the width of the street; that the power of the city to enact such an ordinance was not considered in the suit in which this court ordered the removal of obstructions from Stroelitz street; that the ownership of the public streets is in the community; the governing authorities administer them as a public trust for the benefit of the inhabitants of the city and state, and of strangers, subject to the constitutionally expressed will of the General Assembly; that the General Assembly has sometimes changed the destination of public streets in New Orleans, and from time to time has delegated to the city the power so to do; that it has not appeared that the change or "jog" made in Stroelitz street for the distance of one block would impair the property or rights of the original plaintiff in this litigation; and that the court will take notice that there are many streets in New Orleans having turns, bends, offsets, and jogs for short distances which do not injuriously affect the property or rights of the owners of property situated thereon.

As will be seen from the foregoing, the law invoked by the counsel for the city includes that relied on by the learned respondents. It also includes other provisions and the citation of various adjudged cases and authorities, the whole as follows:

"Streets are 'common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common.' Civil Code, art. 458.

" 'Streets are not the property of any one; they belong to the whole community. They are not the property of the corporation; for, if they were, the corporation could exclude the whole world from the use of them. On the contrary, the use of them belongs to the whole world.' Pothier, Contract of Sale, 13.

" 'Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated or acquired, are for the public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the Legislature may have given the supervision, control, and regulation of them to the local authorities. The Legislature of the state represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the tendency of more recent judicial opinion) to certain private and property rights, and easements of the abutting owner, full and paramount authority over all public ways and public places.' Dillon, Mun. Corp. § 1122.

" 'Whether the fee of the street be in the municipality in trust for the public use or in the adjoining proprietor, it is in either case of the essence of the street that it is public, and hence, as we have already shown, under the paramount control of the Legislature, as the representative of the public the streets do not belong to the city or town within which they are situated, although acquired by the exercise of the right of eminent domain, and the damages paid out of the corporation treasury. The authority of municipalities over streets they derive, as they derive all their other powers, from the Legislature—from charter or statute.' Dillon, Mun. Corp. § 1163.

" 'The plenary power of the Legislature over streets is such that it may, in the absence of constitutional restriction, vacate or discontinue the public easement in them or invest municipal corporations with this authority.' Sadlier v. New York City, 185 N. Y. 408, 78 N. E. 272, and other cases cited by Dillon, Mun. Corp. § 1160.

"A city may, under its statutory power to vacate streets, vacate only a portion of the streets. Brown v. San Francisco, 124 Cal. 274, 57 Pac. 82; Hyde Park v. Dunham, 85 Ill. 569.

"Without a judicial determination, a municipal corporation, under the authority conferred in its charter 'to locate and establish streets and alleys, and vacate the same,' may constitutionally order the vacation of a street; and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner claiming that he is interested in keeping open the streets dedicated to the public. Gray v. Iowa Land Co., 26 Iowa, 387; Meyer v. Teutopolis, 131·

Ill. 552, 23 N. E. 651; Cicero Lumber Co. v. Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; Glasgow v. St. Louis, 107 Mo. 198, 17 S. W. 743.

"The streets and public squares of the city of Washington were conveyed by the original proprietors of the land to the trustees 'for use of the United States forever.' It was held that these words conveyed an absolute fee simple, and that the original proprietors no longer had any interest therein, and therefore could not object to a sale authorized by act of Congress of such portions as were no longer useful. Van Ness v. Washington, 4 Pet. 232, 7 L. Ed. 842.

"The act of vacating a street is legislative in its nature, as well as discretionary, so that the motive of the municipality in passing the ordinance cannot, as a general rule, be inquired into. State v. Minneapolis Park Commissioners, 100 Minn. 150, 155, 110 N. W. 1121, 9 L. R. A. (N. S.) 1045; Tilly v. Mitchell & L. Co., 121 Wis. 1, 98 N. W. 969, 105 Am. St. Rep. 1007.

" 'The city shall have * * * all powers, privileges and functions which, by or pursuant to the Constitution of this state, have been, or could be, granted to or exercised by any city.' Paragraph (e), § 1, Act 159 of 1912 (City Charter of New Orleans).

" 'The commission council shall also have power:

" '1. To order the ditching, filling, opening, widening and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, sidewalk or property which is no longer necessary for the public use to which it was originally destined, or which is needed for public buildings or public utilities owned by the United States, the state of Louisiana or the city of New Orleans, or for the establishment of a railway union depot, or for the enlargement or extension of any hospital which the city of New Orleans utilizes in whole or in part for the care and treatment of destitute persons.' Section 8, City Charter, Act 159 of 1912, as amended by Act 29 of 1918.

" 'In addition to the powers and authority granted to the commission council under any of the provisions of this charter, to sell or change the destination of any street or property under the conditions therein stated, the commission council shall also have power and authority by a two-thirds vote of all the members elected thereto, if the commission council deems the same for the public benefit, to allow the substitution of a new street or streets of equal or greater width for an existing street or existing streets, upon a petition signed by every person owning real property in the square or squares of which such existing street or streets are boundaries, the entire improvement to be made, and the extra cost thereof, including intersections, to be borne by the owners of real property fronting on such existing street or streets, all work to be done according to plans to be approved by the commission council and upon lines and levels to be furnished by the commissioner of public property.' Section 50, Act 159 of 1912, as amended by Act No. 69 of 1916.

" 'The municipal councils or other governing bodies of cities, towns and villages may by proper ordinances, exchange property, including streets, with property owners, so that new streets should be laid out and dedicated * * * and property acquired therefor, and other streets or parts of streets given in exchange and to become private property.' Act 83 of 1916.

" 'The city council of the city of New Orleans shall have the power, by a two-thirds vote, to close and sell any public street or alley in the city of New Orleans, not over two hundred feet in length, and which is no longer necessary for public use.' Act 93 of 1904, p. 212.

"Further by Act No. 81 of 1914 it is provided that cities and towns having a population under 75,000 and more than 25,000 'shall have authority to curtail the width of any street or alley when considered advisable, and sell the part not needed or required, or to exchange same for other ground to be used for street purposes as an equivalent for the strip of street so exchanged, provided that * * * a majority of the property tax payers in said city or town, voting at an election to be called for such purposes, shall approve said proposed said sale or exchange.' "

"The Legislature of the state has, lacking constitutional limitations and restrictions, plenary power over the streets. The Legislature could, and did, delegate this plenary power over the streets in the city of New Orleans to the municipal government. As to urban streets in Louisiana, and certainly in the city of New Orleans, in case of dedication thereof to the public or other mode of acquisition by the public, the fee passes to the public, and not merely an easement, or servitude, as at common law."—Citing C. C. arts. 454, 458; Dublin v. New Orleans, 1 Mart. (O. S.) 185; Renthorp v. Bourg, 4 Mart. (O. S.) 97; D'Armas v. New Orleans, 5 La. 157 (affirmed, 10 Pet. 224). See, also, Mayor v. Hopkins, 13 La. 326; Dudley v. Tilton, 14 La. Ann. 283; Brown &

Co. v. Duplessis & New Orleans, 14 La. Ann. 842; Sheen v. Stethart, 29 La. Ann. 631; Irwin v. Telephone Co., 37 Là. Ann. 67; Tissot v. Tel. Co., 39 La. Ann. 999, 3 South. 261, 4 Am. St. Rep. 248; L. & N. Co. v. N. O. Terminal Co., 120 La. 978, 45 South. 962; Zagame v. New Orleans, 128 La. 388, 54 South. 916; Kane v. N. Y. El. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640.

"The commission council, the legislative body of the city of New Orleans, is the judge as to whether or not a vacation or alteration of the course of the street is the proper thing to be done, so that, as a general rule, the motive of the municipality cannot be inquired into, for such an act is both legislative in its nature and discretionary. State v. Minneapolis Park Com., 100 Minn. 150, 110 N. W. 1121, 9 L. R. A. (N. S.) 1045; Tilly v. Mitchell & L. Co., 121 Wis. 1, 98 N. W. 969, 105 Am. St. Rep. 1007; City v. New Orleans Jockey Club, 115 La. 911, 40 South. 331; Van Ness v. City of Washington, 4 Pet. 232, 7 L. Ed. 842."

We express no present opinion of the law thus referred to farther than to observe that the delegation of power therein contained as to the manner of the administration and control by the commission council of the streets of New Orleans seems fairly broad; that the determination of the extent to which it should be sustained may involve some consideration of those provisions of the Constitution which protect the rights of property and the obligations of contracts; and that, for the purposes of this case, it requires more definite information as to the facts connected with the exercise by the city of power so delegated than is furnished by the record herein or than can well be furnished in this form of proceeding.

It is to be remembered that this controversy differs from that heretofore decided, both as to the questions involved and the parties litigant, in that the previous case presented merely the question of the clearing of several streets through which the plaintiff demanded free passage to and from her property and the removal of obstructions (placed there by defendant, without apparent right so to do) which occluded the streets entirely, to the detriment of plaintiff's property and the prejudice of her rights; and the only parties litigants were the plaintiff and the single defendant (now relator herein). In that suit it was said by the court that, in order to entitle plaintiff to a judgment, it was necessary that she should show some injury peculiar to herself; and it was held, with reference to some of the streets of which she complained, that she showed no such injury; the statement and ruling so made being predicated mainly upon the jurisprudence of this and other courts to the effect that an obstruction to a street, constituting a public nuisance, is, in general, a matter for the municipal authorities to take charge of, and that it is only when it inflicts some special injury upon a particular citizen, in his property or other rights, that he acquires a cause of action entitling him to come into court.

The instant case, on the other hand, concerns but one of the streets complained of, as to which relator exhibits as muniments of title an ordinance and act of exchange from the city of New Orleans (passed and executed after the rendition of the judgment in the previous suit) whereby the conveyance to it of a portion of the street (one square, 50 x 100 feet in width and length) was made in exchange for a strip of land of like dimensions lying adjacent thereto, with the intended effect of allowing relator's mill to remain where it has stood for many years, and now stands, and of shifting the lines of the street for a distance equal to its width, and, as thus shifted, providing a continuous open street with two offsets of 50 feet each. If the ordinance and contract of exchange are valid, they constitute a title which, not having been in existence when this court rendered its judgment in the former suit, could not have been considered, and cannot be affected by, or disregarded in, the execution of that judgment. If they are invalid, they

should not be allowed to prevent the ultimate execution of the judgment. But the plaintiff, in whose favor the judgment was rendered, has no capacity, of herself, to decide that question, and, upon the assumption that both ordinance and contract are invalid, proceed with the execution of her judgment by tearing down plaintiff's mill; nor does it seem equitable that she should be permitted through the machinery of the courts, so to do, until relator and the city have been afforded a hearing upon the question of validity or invalidity and the correlative question, whether the portion of the street which was the subject of the legislation and contract in question is within or beyond the operation and grasp of her judgment. A somewhat similar situation was presented in a case decided by this court some 60 years ago in which it appeared that prior to the issuance of a certain writ of seizure and sale the vendee of the seized property had instituted an action quanti minoris against the vendor, which, if successful, would have absorbed the amount demanded under that writ, and had enjoined the sale.

It was said by this court:

"Considering that it is impracticable to determine at this time and in this proceeding what the amount of such deduction may be, and considering that the diminution of price claimed would much more than absorb the amount of the executory demand, we think it just to perpetuate the present injunction without prejudice to the eventual right of the defendant in injunction."

In the instant case, no injunction having been issued, the questions arise: Should it have been issued? What remedy has relator if it be not issued? Is it competent for this court to order its issuance? We answer the first of these questions by saying that, in our opinion, the injunction should have been issued, and one of the reasons for that opinion is a partial answer to the second question, to wit, the relator, so far as we can see, has no other remedy, which brings us to the answer to the third question and the completion of the answer to the second:

The Constitution (article 94) vests in this court "control and general supervision over all inferior courts," and in "the court, or any justice thereof, * * * power to issue writs of certiorari, prohibition, mandamus, quo warranto, and other remedial writs"; and we understand the purpose of that article to be to provide a tribunal and judicial officers vested with authority to protect the citizen from injustice arising from the errors of commission or omission of any court in the state, and, more particularly, to find and apply remedies for wrongs in cases where no adequate remedies are otherwise provided. In State ex rel. Murray v. Judge, 36 La. Ann. 578, this court, in considering an application similar to that of the present relator (save that the allegations of the petition were held to be insufficient), after referring to article 90 of the Constitution of 1879 (with which article 94 of the present Constitution is identical), took occasion to refer to articles 830 and 831 of the Code of Practice, giving the language of these articles practically as in the Code, as follows:

"We find it distinctly stated that the object of the writ of mandamus is to prevent a denial of justice; that the writ should, therefore be issued where the law has assigned no relief by the ordinary means and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever. It arises, says the Code, at the discretion of the court, even where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay that the administration of justice may suffer from it."

We are well aware of the general rule (and it is mentioned in the opinion above quoted) that mandamus will not lie to reverse the ruling of a judge of first instance in refusing to order the issuance of an in-

junction in any case in which the law leaves the question to his discretion, and that it has been held by this court that the only cases in which the question is not left to his discretion are those specified in C. P. 298, among which the particular case now under consideration is not included; nor would it be possible for human ingenuity to devise an article or a code which would embrace all cases equally meritorious with those that are included in that article. General rules are, however, usually subject to exception, and, we conclude that the general rule here in question should yield to the requirement, as we consider it, of the Constitution, that the supervisory power of the court should be used to prevent injustice in judicial proceedings; and to the express declaration of the Code of Practice that "it (referring to the writ of mandamus) should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever."

We are satisfied that our learned brethren of the district court are incapable of intending injustice in this or in any case; but it appears to us that owing, perhaps to some confusion which seems to have arisen in the distribution or handling of the different cases which have arisen in this litigation, the original defendant (relator herein) and the city of New Orleans, the validity of whose ordinance and contract are at issue, have not been afforded the full opportunity to protect their interests, to which they are entitled. We find also that, by reason of the course that the litigation has taken, this court will be called upon, if the contentions of the original plaintiff be sustained, to decide, as in the first instance (on the merits), and in a proceeding in which all the facts are not disclosed, a case of serious public importance and private interest to which its original jurisdiction does not extend, and which should properly be brought up by appeal; that it would be unjust to the relator that the judgment heretofore rendered should be executed by the destruction of its property, while the question whether the property has not been withdrawn beyond the grasp of that judgment remains undecided, and hardly fair to the city that its ordinance and its contract entered into pursuant thereto should be annulled, actually or in effect, in a proceeding in this court to which it is not made a party, while an attack upon the ordinance which it has been called upon to defend is left undecided and the jurisdiction of the court in which it is pending practically ousted. Upon the whole, it appears inevitable that, unless some action is taken by this court, an injustice will be done, and the proper and necessary action to be taken, in our opinion, is to make peremptory the alternative writ of mandamus herein issued:

It is therefore ordered and adjudged that the decree heretofore handed down in this case be set aside, and that there now be judgment in favor of relator directing the respondent judge, having jurisdiction in the matter, to order the issuance of a writ of injunction as prayed for in the petition presented by relator, and upon relator's furnishing such bond as he (the judge) may require.

PROVOSTY and DAWKINS, JJ., dissent.