40 N.J. Super. 86 (1956)
122 A.2d 250
EDWARD S. KOCH, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
BOROUGH OF SEASIDE HEIGHTS, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND SHORE BORO'S POST 351 AMERICAN LEGION, ETC., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1956.
Decided April 17, 1956.
*89 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Vincent A. Grasso argued the cause for defendant-appellant and cross-respondent, Borough of Seaside Heights (Messrs. Hiering & Grasso, attorneys).
Mr. Jerome J. Doherty argued the cause for plaintiff-respondent and cross-appellant (Mr. Joseph A. Citta, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff is a resident and taxpayer of the Borough of Seaside Heights. The pretrial order indicates that he is also a shareholder and secretary of a corporation which "occupies" a parcel of land extending from the boardwalk to Ocean Terrace and abutting the southerly side of Lincoln Avenue. The corporation operates a commercial amusement device known as a "whip" on the property, the entrance being on the boardwalk.
Plaintiff instituted this action in lieu of prerogative writs March 26, 1954 to attack the following transaction of the *90 municipality. On March 3, 1954 the mayor and council of the Borough adopted two resolutions, one involving a parcel of land approximately 25 feet square abutting the boardwalk at the easterly end of Lincoln Avenue, and the other a similar parcel at the easterly end of Hamilton Avenue, which lies two blocks north of Lincoln Avenue. Both streets run east-west from Bay Avenue on the west to the vicinity of the boardwalk on the east. The boardwalk runs north-south athwart the ocean beach-front. The resolutions authorized the entry by the borough into leases for the lands, one to defendant Seaside Heights Volunteer Fire Company No. 1, and the other to defendant Shore Boro's Post No. 351 American Legion, each for a ten-year term at a rental of $1. The leases were executed the same day. On or about the same date each of the lessee organizations "sublet" its leased premises to a particular private individual, different in each case, but in both instances for a consideration of $40,000 for the ten-year period, and contemplating the erection of buildings on the lands, to be used for commercial purposes, fronting on the boardwalk at the foot of the streets mentioned. The complaint charges that the sublessees were selected by the Mayor of the borough in advance and that the entire transactions were effected in bad faith. The structures were actually substantially completed and were standing at the time of trial.
On April 2, 1954 a restraint pendente lite was entered against further construction of the buildings, use of the properties or payment of rents pursuant to any of the leases. On April 7, 1954 the defendant borough rescinded its leases with the named organizations, and the subleases were cancelled the same day.
Plaintiff made two main contentions of illegality in the actions of the borough in this transaction. The first was that the leases were made without advertisement nor by award to the highest bidder, and for a term in excess of five years; the second that the property leased was in each case part of a public street. At the trial of the cause, the leases having been rescinded but the structures remaining, *91 the issues were confined to the questions whether the structures stood on public streets and whether plaintiff had sufficient interest to entitle him to maintain the action. The case was tried before one judge, but its determination, for administrative reasons, transferred to another. We have, for this reason, acceded to the request of the borough that we determine this appeal on the basis of our independent review of the entire record. Cf. Raskin v. Town of Morristown, 21 N.J. 180. The trial court held: (1) the lands in question are public streets, the borough being estopped from asserting the contrary because of the continuous use thereof by the public for over twenty years; (2) the plaintiff has status to bring the action as to the Lincoln Avenue parcel because the existence of the structure at that location especially injures him in respect to his use of his own property, but he has no status as to the Hamilton Avenue parcel, his injury with respect thereto being no different in kind from that of the general public. The amended final judgment dismissed the first count of the complaint, which concerned Hamilton Avenue, and granted a permanent injunction against the maintenance of the structure in Lincoln Avenue and an order for its removal.
The court was informed at the argument of these appeals that the structures have been removed from the properties concerned except as to the remnants of the foundations. To that extent the areas affected are still not usable as streets.
The defendant municipality appeals, and the plaintiff cross-appeals the failure of the trial court to extend the scope of relief to the property at Hamilton Avenue. We consider first the matter of plaintiff's status.
The position of the borough is that since the phase of the action concerned with the legality of the leases was moot at the trial herein by reason of the rescission of the leases, plaintiff's status to complain in his interest as a resident and taxpayer no longer supported his action and that it then became incumbent upon him to show that the structures in the street caused him special injury above that sustained by the general public. Poulos v. Dover Boiler & Plate *92 Fabricators, 5 N.J. 580 (1950). The argument is that he failed in this regard as to Lincoln Avenue as well as to Hamilton Avenue. The ostensible basis for the allegation of special injury to plaintiff in respect to the Lincoln Avenue structure is that it obstructed his business sign from the view of boardwalk passersby approaching the location from the north. The trial court regarded the showing of special injury as sufficient, within such authority as Beecher v. Board of Street & Water Com'rs of City of Newark, 64 N.J.L. 475, at page 478 (Sup. Ct. 1900), affirmed 65 N.J.L. 307 (E. & A. 1900), wherein the requisite status was held present on the ground, among others, that business signs on prosecutors' nearby premises were rendered less visible by the street obstruction there complained of. See also Union Towel Supply Co. v. Jersey City, 99 N.J.L. 52 (Sup. Ct. 1924). But see Attorney-General ex rel. Stickle v. Morris & E.R. Co., 19 N.J. Eq. 386 (Ch. 1869), reversed sub nom. Morris & E.R. Co. v. Prudden, 20 N.J. Eq. 530 (E. & A. 1869) on the frequently assigned ground that the public nuisance there involved was remediable by indictment. The cases touching this subject are in a state of conflict and confusion, both as to legal theory and compatability of factual result. There is no present profit in citing all of them. A number of the cases are collected in Warren Foundry & Pipe Corp. v. Meriden Stone Co., 32 N.J. Super. 254 (App. Div. 1954); see 21 New Jersey Digest, Nuisance. Mere inconvenience in reaching plaintiff's property is not the kind of special injury which affords status in this kind of case. Poulos v. Dover Boiler & Plate Fabricators, supra, 5 N.J., at page 587. It is there said that the special injury to sustain status to restrain a public nuisance must be "to a legal right which he [plaintiff] would have in his own lands or in an appurtenance thereto and not to any right which is appurtenant to his land which he enjoys with other members of the public." (Id.) It appears doubtful whether the holding of special injury could stand in the matter before us as against the foregoing language. We pass the point, however, as we cannot avoid noticing, although it is not argued, that *93 plaintiff is, as an individual, neither the owner nor operator of the "whip" amusement business. The corporation operator (not even itself owner of the land) in which he is a shareholder is not a party plaintiff. This defect is so obvious and controlling that, without more, we deem it dispositive of plaintiff's lack of status in the sense of special injury to his own peculiar property interests. But we have nevertheless reached the conclusion that a determination of the meritorious questions involved in this litigation was properly entered upon by the trial court.
The action instituted by plaintiff as a taxpayer was founded not only upon an apparent injury to the municipality in a pecuniary sense, thereby implicating the interests of every taxpayer, Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953); City of Millville v. Board of Education of City of Millville, 100 N.J. Eq. 162, 166 (Ch. 1926), affirmed 101 N.J. Eq. 303 (E. & A. 1927), but, of even more significance, raised a question of gross illegality and abuse of their public responsibilities by the officials of the borough. It is now firmly held that an action to vindicate the right of the public to honest and faithful rendition of services by public officials will lie at the instance of a citizen taxpayer totally apart from considerations of pecuniary prejudice to the body politic. Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 171 (App. Div. 1949); and see Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-476 (1952), certiorari denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), rehearing denied 344 U.S. 888, 72 S.Ct. 188, 97 L.Ed. 687 (1952); Garrou v. Teaneck Tryon Co., 11 N.J. 294, 302 (1953). In our opinion, when an action of this kind is brought by a taxpayer in good faith he is entitled, as a matter of salutary public policy, to maintain it to a finality and to have the judgment of the court not only by way of determination as to legality but also for the extirpation of every act done in the course and in furtherance or consummation of the illegal scheme. The right to vindicate the public interest in a complete nullification of the transaction in all of its out-branches *94 should not be foreclosed by the undoing by the municipality of a part of the asserted misdeed pendente lite. In the present case the erection of the structures was part and parcel of the allegedly illegal transaction. Were it not for the leases attacked by the action and since rescinded, the structures would not have been erected. We therefore hold that the status which plaintiff unquestionably possessed to bring this action in its initial aspect persisted to support the complete disposition of the subject matter of the controversy involved, notwithstanding his lack of any interest other than as a taxpayer and resident. The subject of the controversy included the objectionable structures and their presence on what plaintiff contends are public streets. Since, however, the borough defends the existence of the structures (or their remaining foundations) on the independent ground that, whether or not the leases were valid, the loci in question are municipal property not dedicated as streets and therefore free to be used as the discretion of the municipality dictates, we are required to assess the adverse conclusion of the trial court on this point. The pertinent factual and legal issues were fully tried. Moreover, the public interest in the matter of the title and status of these streets warrants judicial settlement of the question. Cf. City of Newark v. Pulverman, 12 N.J. 105, 116 (1953); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 364 (1954); City of Newark v. Division of Tax Appeals, 7 N.J. 8, 12 (1951).
Prior to 1925 there existed in Seaside Heights a paper street, 50 feet wide, designated on the plan of the Manhasset Realty Company as Ocean Avenue, running north-south along the beachfront. An ordinance was adopted in 1925 vacating the street, and, in 1926, the borough received a deed of the property lying within Ocean Avenue from the trustees in liquidation of the Manhasset Realty Company, subject to the condition that the borough could convey only the westerly 25 feet of the property. Thereafter the borough exchanged with the property owners along the so-called Ocean Avenue from Grant Avenue on the north to Dupont Avenue on the south the westerly 25-foot half of the 50-foot strip in return *95 for the rear 25 feet of their several properties. The latter properties were then dedicated by the borough for street purposes and are now laid out as a north-south street, roughly parallel with the boardwalk, known as Ocean Terrace. A boardwalk was built on what was the easterly one-half of Ocean Avenue, to a width of 20 feet, and adjoining property owners have built upon the westerly one-half along the boardwalk. The residual protrusions of the westerly half of Ocean Avenue at the easterly ends of the east-west streets in the borough, particularly the parcels at Lincoln and Hamilton Avenues here in contest, were never conveyed by the municipality or built upon prior to the present controversy. They were used, from time to time, however, and to an extent much controverted by the opposing witnesses, for the parking of vehicles, and ramps were constructed on both sides of the named streets for pedestrian access from the street sidewalks to the boardwalk. The meritorious question is whether either of these 25-foot areas attained the status of streets, or, rather, of integral portions of Lincoln Avenue and Hamilton Avenue, respectively, so as to prevent their use by the municipality for other than street purposes so long as such status continues.
An attempt was made by plaintiff to fashion a case primarily on the basis of continuous public use of the areas for street purposes for over twenty years. As indicated, the case made in that behalf satisfied the trial court. We cannot agree with the conclusion insofar as it rests on the basis of a 20-year user. While we believe the evidence adduced justified a finding that, at various times during the 20-year period prior to 1954, and earlier as far back as 1928, motor vehicles were parked on both of the loci in quo, the evidence is plenary that at many other times during the 20 years prior to 1954 the municipality manifested its intention and desire that the public refrain from parking or entering upon these parcels and took physical measures to prevent it. Witnesses on both sides testified that during the late 1930's or early 1940's poles and other kinds of uprights were driven by borough employees into the ground at points less than *96 from 25 to 40 feet from the boardwalk, bearing signs warning vehicles to keep out.
In order to establish a prescriptive right against the owner of land there must exist a "user that is adverse, hostile, continuous, uninterrupted, visible and notorious." Plaza v. Flak, 7 N.J. 215, 220 (1951); Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954). It must appear not to be merely a use by permission. Poulos v. Dover Boiler & Plate Fabricators, supra (5 N.J., at page 588). Certainly these requirements should not be relaxed in aid of the assertion of rights adverse to a municipal corporation, against which estoppel generally will be invoked only in exceptional circumstances. 6 McQuillin, Municipal Corporations (3rd ed. 1949), § 20.13, p. 30. Cf. Long Branch v. Toovey, 104 N.J.L. 335, 338 (E. & A. 1928); Priory v. Borough of Manasquan, 39 N.J. Super. 147 (App. Div. 1956). Without consideration of the other elements, it is clear to us that the prescriptive right asserted here lacked continuity during the entirety of the period claimed; moreover that, until the events later herein discussed, the user relied upon was more consistent with permission on the part of the municipal officials than with the assertion of a general public right to use the properties as streets in hostility to the reserved right of the municipality of unrestricted dominion. Plaintiff's burden was not carried. Plaza v. Flak, supra (7 N.J., at page 222); see A.J. and J.O. Pilar, Inc., v. Lister Corporation, 38 N.J. Super. 488 (App. Div. 1956).
There being no factual foundation for the finding of a prescriptive right in the properties as a thoroughfare, we proceed to a consideration of plaintiff's alternative contention that the areas in question became such by dedication by the borough. Defendant urges that since the governing body has never dedicated the parcels for street purposes by ordinance or other unequivocal overt act, a dedication cannot be deemed to exist. The point appears to be one of first impression in this State in application to an alleged dedication by a municipality. As applied to private landowners a dedication of land for street purposes may be implied from *97 the acts of the owner and the circumstances of the user. Campbell Stores v. Mayor and Council of City of Hoboken, 115 N.J. Eq. 159, 163 (E. & A. 1934).
In substance, the argument of defendant is that a municipal body should not be deemed capable of divesting itself of unrestricted title to and dominion over its property by implication. But the almost uniform course of judicial decision elsewhere has been that if the conduct of the responsible governing authorities sufficiently clearly manifests an intention to dedicate municipally owned property for particular public purposes, the intention will be effective notwithstanding lack of formal declaratory action of that purport. 16 Am. Jur., Dedication, § 13, p. 356; Board of Park Com'rs of Ashland v. Shanklin, 304 Ky. 43, 199 S.W.2d 721, 722 (Ct. App. 1947); Knox v. Roehl, 153 Wis. 239, 140 N.W. 1121 (Sup. Ct. 1913); Phillips v. Leininger, 280 Ill. 132, 117 N.E. 497 (Sup. Ct. 1917); Zagame v. City of New Orleans, 128 La. 388, 54 So. 916, 917 (Sup. Ct. 1911); Bennington County v. Town of Manchester, 87 Vt. 555, 90 A. 502 (Sup. Ct. 1914); and see City of McCook v. Red Willow County, 133 Neb. 380, 275 N.W. 396 (Sup. Ct. 1937); Kenneson v. City of Bridgeport, 130 Conn. 298, 33 A.2d 313, 315 (Sup. Ct. Err. 1943); Village of Hicksville v. Lantz, 153 Ohio St. 421, 92 N.E.2d 270, 274, 275 (Sup. Ct. 1950); Yolo County v. Barney, 79 Cal. 375, 21 P. 833, 835 (Sup. Ct. 1889); Board of Com'rs of Garfield County v. Anderson, 167 Okla. 253, 29 P.2d 75 (Sup. Ct. 1934).
The only anomaly in such a situation is that the intent to accept the dedication required to be shown must be by the same body from whose conduct the intent to dedicate is implied. In such a case "the questions of intent and acceptance merge more or less into each other" and slight proof of acceptance is needed where clear intent to dedicate can be gathered, "for it will be presumed that the city intends to accept, in behalf of the public, its own dedication." Knox v. Roehl, supra (140 N.W., at page 1123).
In our State it is settled that the intention on the part of a municipality to accept an offer by a private landowner to dedicate may be established by acts of dominion and *98 control exercised by the governing body. Sarty v. Millburn Township, 28 N.J. Super. 199 (App. Div. 1953); Schmidt v. Spaeth, 86 N.J.L. 179 (E. & A. 1914). Since a conclusion of acceptance, against the later expressed will of the municipality, can thus effect a dedication burdensome to the governing body based on conduct alone, there would seem to be no reason in logic or policy why dedication of municipally owned property for public purposes, absent contravention by any statutory provision, should not likewise be held inferable from sufficiently clear indicia by conduct. We proceed on that hypothesis.
Our inspection of the evidence satisfies us that a course of conduct by and with the concurrence of the governing body of Seaside Heights, beginning in 1946 or 1947, evinces clear and compelling evidence of a dedication of these street ends for public street purposes. There was testimony by the road foreman of Ocean County that in 1946 or 1947, at the direction of the municipality and under a county aid program, he caused sand to be excavated from the areas in question on both streets and gravel and blacktop to be installed all the way to the boardwalk. This was corroborated by other witnesses. On June 4, 1947 an ordinance was passed which prohibits parking "on the most easterly twenty feet of any street running in an easterly and westerly direction" and provides that in such 20-foot locations "loading and unloading stations shall be permitted in order to facilitate the conduct of general business on/and in the vicinity of the public boardwalk immediately east of said twenty feet areas," subject to ten-minute limitations. This ordinance plainly demonstrates an intent by the governing body that these areas should be treated as integral portions of the streets with which they are physically merged. The regulations as to parking do not, of course, derogate from the indicated character of the areas as part and parcel of the public thoroughfares.
The judgment under review is modified so that the injunction contained therein be broadened to include the property at Hamilton Avenue and that the dismissal of the first count of the complaint be set aside.